WILLIAM PRYOR, Circuit Judge:
.This appeal requires us to decide whether the district court should have held an evidentiary hearing before it denied Reynaldo Castillo’s motion to vacate his sentence for his counsel’s failure to move to suppress the fruits of a warrantless search and to dismiss his indictment. Before conducting the search, a pretrial intervention officer received a tip that Castillo possessed a firearm in violation of his pretrial intervention agreement. The officer searched Castillo’s house, over his objection, and observed a bolt-action rifle in his bedroom. Based on that information, the police obtained a search warrant for the house, where they found 13 guns. Federal authorities then convicted Castillo of illegally possessing and making guns, 26 U.S.C. §§ 5861, 5871. He later filed a motion to vacate, 28 U.S.C. § 2255, which the district court denied without an eviden-tiary hearing. We conclude that the war-rantless search of Castillo’s house was reasonable because the pretrial intervention officer had reasonable suspicion, because the supervision permitted by the pretrial intervention agreement gave Castillo a diminished expectation of privacy, and because the state has strong interests in the effectiveness of its pretrial intervention program. We affirm the denial of Castillo’s motion without an evidentiary hearing.
I, BACKGROUND
In 2008, Reynaldo Castillo entered a pretrial intervention program as part of a deferred prosecution agreement “with the State of Florida. Florida offers the program to first-time offenders and some, second-time offenders, Fla. Stat. § 948.08(2), who are then supervised by probation officers. Although. Castillo did not -plead guilty in court, he confessed to five counts of burglary and one count of dealing in stolen property. Castillo’s pretrial intervention .agreement had several conditions, including that he would “neither possess [nor] carry any firearm or weapon,” that he would “truthfully answer all inquiries by [his] Pretrial Intervention Officer,” that “the officer may visit '[his] home ... or elsewhere without [his] prior approval,” that he would “comply with all instructions he or she may give [him],” and that he would “submit to a urinalysis, breathalyzer, or blood tests at any time requested by [his] Pretrial Intervention Officer.” If Castillo violated any of these conditions during the 18 months of the program, Florida reserved the right to prosecute him for the charges to which he had confessed.
While Castillo was in the program, Kimberly Greene, the mother of his ex-wife, informed the local probation office that Castillo had a gun. She faxed the officer on duty a copy of -a MySpace page with a photograph of a m'an who appeared to be Castillo. In the photograph, the man held a gun, wore a mask and goggles, and extended his middle finger. The page was entitled “To all you Greene’s FUCK YOU! your’re [sic] all Reynaldo is having a great time with his friends, cause I hang out with female friends.” It mentioned Castillo’s ex-wife by name and insulted her and her family members'. At the bottom it announced, “I promise i will get all of you before i go.”
The probation officer on duty, Louis Kurtz, went to Castillo’s house to look for the gun. A police officer who accompanied Kurtz for security felt the hood of Castillo’s car, which was hot. Kurtz knocked loudly and called Castillo’s home and cell phones, but it took about 15 minutes for Castillo to open the door. Castillo denied that he had a gun and' objected to the *1303 search. Kurtz nonetheless entered the house and saw in Castillo’s, bedroom a bolt-action rifle, gun cases, multiple calibers of ammunition, Kevlar helmets, and a mask matching the one in the. photo.
'Based on Kurtz’s observations, two police officers applied for a warrant to search Castillo’s house. In their affidavit, they swore that Castillo unlawfully possessed firearms “in violation of the laws of the State of Florida, to-wit: The laws prohibiting the possession of firearms in violation of terms of probation contrary to section 948.06.” They also stated the details of Kurtz’s search and that the pretrial intervention agreement prohibited Castillo from having a firearm. After a state judge issued the warrant, the police seized 13 firearms and over 7,000 rounds of ammunition from Castillo’s house.
Federal agents later arrested Castillo, and a jury convicted him of possession of an unregistered short-barreled rifle, 26 U.S.C. § 5861(d); possession of a short-barreled rifle not identified by serial number, id. § 5861(i); possession of an unregistered machine-gun receiver, id. § 5861(d); making a machine-gun receiver, id. § 5861(f); and making a machine gun, id. § 5861(f). The district court sentenced Castillo to 96 months of imprisonment and 3 years of supervised release. We upheld the convictions on appeal. United States v. Castillo, 409 Fed.Appx. 250 (11th Cir.2010).
In 2012, Castillo moved to vacate his convictions on six grounds, only two of which are before us now. First, he alleged that his trial counsel was ineffective because he “failed to move the Court* to suppress any and all evidence obtained by or as a result 6f probation officer Louis Kurtz’s warrantless and demonstrably illegal search of Castillo’s residence;” Second, he alleged that his trial counsel was ineffective because he “failed to move the Court to dismiss the indictment based upon Probation Officer Louis Kurtz’s illegal search of Castillo’s residence.” The district court denied Castillo’s.motion without an evidentiary hearing. We granted a certificate of appealability limited to the following question: “Whether the District Court erred in denying, without an eviden-tiary hearing, Mr. Castillo’s claim that counsel rendered ineffective assistance by failing to move for suppression of the evidence obtained through the fruits of a warrantless search of his house, or for failing to move for dismissal of the indictment.”
II. STANDARD OF REVIEW
“We review the denial of an evidentiary hearing for abuse of discretion.” Diveroli v. United States, 803, F.3d 1258, 1262 (11th Cir.2015). “Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon....” 28 U.S.C. § 2255(b). We may affirm on any ground supported by the record.” LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir.2014).
III. DISCUSSION
Because Castillo’s motion’ failed-to allege a constitutional violation, he was not entitled to an evidentiary hearing. To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If a search was constitutional, then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a defendant is not prejudiced by counsel’s failure to do so. See Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *1304 Zakrzewski v. McDonough, 455 F.3d 1254, 1260-61 (11th Cir.2006).
The warrantless search of Castillo’s home was constitutional. Counsel did not perform deficiently, arid Castillo suffered no prejudice.
The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and. effects, against unreasonable searches and seizures.” U.S. Const. Amend. IV. “ ‘[U]pder [the] general Fourth Amendment approach’ we ‘examin[e] the totality of the circumstances’ to determine whether a search is reasonable within the meaning of the Fourth Amendment.” Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (first and third alterations in original) (quoting United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)). “Whether a search is reasonable ‘is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.’ ” Id. (quoting Knights, 534 U.S. at 118-19, 122 S.Ct. 587). Neither the Supreme Court nor this Court has applied this standard in the context of a pretrial intervention program, but several decisions about searches of probationers and parolees guide our review. See id. at 846, 126 S.Ct. 2193 (upholding a suspicionless search of a parolee who was subject to searches as a condition of parole); Knights, 534 U.S. at 122, 122 S.Ct. 587 (upholding a search based on-reasonable suspicion of a probationer who was subject to searches as condition of probation); United States v. Carter, 566 F.3d 970, 971, 974 (11th Cir.2009) (upholding a search based on reasonable suspicion of a probationer who was subject to unannounced home visits as a condition of probation).
We conclude that the warrantless search of Castillo’s home was reasonable. Castillo had a diminished expectation of privacy because of his participation in pretrial intervention. Moreover; Florida has important interests in rehabilitating individuals in pretrial intervention and preventing them from offending again. And Officer Kurtz had reasonable suspicion to conduct the search.
Castillo’s participation in pretrial intervention reduced his expectation of privacy. “The expectations of privacy of an individual taken into police custody ‘necessarily [are] of a diminished scope.’ ” Maryland v. King, — U.S. —, 133 S.Ct. 1958, 1978, 186 L.Ed.2d 1 (2013) (alteration in original) (quoting Bell. v. Wolfish, 441 U.S. 520, 557, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The law has long recognized that an arrestee released from custody may remain subject to restraints on his liberty. See, e.g., Hensley v. Mun. Court, 411 U.S. 345, 348-49, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (holding that a defendant released on recognizance was in custody for purposes of habeas); 1 Joel Prentiss Bishop, Criminal Procedure § 248, at 148 (3d ed. 1880) (defining bail as “the delivery, in legal form, of one under arrest to another or others who thereby become entitled to his custody”); 4 William Blackstone, Commentaries on the Laws of England *294 (1769) (explaining that a person free on bail is “supposed-to continue in [his sureties’] friendly custody, instead of going to gaol”); 2 Matthew Hale, The History of the Pleas of the Crown *124 (1736) (explaining that “he that is bailed, is in supposition of law still in custody, and the parties that take him to bail are in law his keepers”); 2 William Hawkins, A Treatise of the Pleas of the Crown 88 (3d ed. 1739) (explaining that in the Court of King’s Bench, “a man’s Bail are- looked upon as his Gaolers of his own choosing and that *1305 the Person bailed is in the Eye of the Law for many Purposes, esteemed to be as much in the Prison of the Court by which he is bailed, as if he were in the actual Custody of the proper Gaoler”' (footnotes omitted)). Castillo agreed to conditions that allowed, home visits from an officer and required him to respond to all questions. Cf. Carter, 566 F.3d at 974. He even accepted a condition that allowed suspicionless drug tests. Because he was subject to supervision, we conclude that Castillo had a diminished expectation of privacy.
Florida has interests in rehabilitating participants in pretrial intervention and preventing them from reoffending. The Supreme Court has “repeatedly acknowledged- that a State’s interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers- and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.” Samson, 547 U.S. at 853, 126 S.Ct. 2193. This interest serves both offenders the state hopes to rehabilitate and citizens the state seeks to protect from future crimes committed by the offender. See id. at 853-54, 126 S.Ct. 2193; Knights, 534 U.S. at 120-21, 122 S.Ct. 587. The Supreme Court has also recognized that parolees and probationers convicted of a crime are more likely to offend than the typical citizen. See Samson, 547 U.S. at 853, 126 S.Ct. 2193; Knights, 534 U.S. at 120-21, 122 S.Ct. 587. Although an individual in pretrial intervention may not be as likely to reoffend as a parolee or probationer, Castillo entered pretrial intervention to rehabilitate himself and prevent recidivism. And Florida could expect that Castillo would be more likely than the average citizen to commit a crime. As a result, Florida could make reasonable intrusions to deter him from offending again.
Warrantless searches of participants in pretrial intervention to ensure compliance with the program can be reasonable under the Fourth Amendment. As an initial matter, the threat of warrant-less searches may deter wrongdoing before it begins. Cf. United States v. Kincade, 379 F.3d 813, 838-39 (9th Cir.2004) (discussing the deterrent effect of DNA tests on supervised releasees). And if deterrence fails, a warrantless search can help catch a wayward participant. After Castillo told Officer Kurtz that he had no guns, a search led to the discovery of 13 guns. Participants in pretrial intervention, like parolees and probationers, have a special incentive to cover up new crimes and violations of their agreements because the close supervision in their programs makes, it more likely -that they will be caught. See Knights, 534 U.S. at 120, 122 S.Ct. 587; Carter, 566 F.3d at 974. Unduly restricting searches would allow participants to hide evidence of their misdeeds and undermine the effectiveness of the program. Cf. Samson, 547 U.S. at 854, 126 S.Ct. 2193.
Officer Kurtz was entitled to conduct a warrantless search of Castillo’s house so long as he had reasonable suspicion of a crime or a violation of the pretrial intervention program. “Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term ‘probable cause,’ a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable.” Knights, 534 U.S. at 121, 122 S.Ct. 587. The Supreme Court required only reasonable suspicion to search the probationer in Knights, and we likewise required only reasonable suspicion to search the probationer in Carter. See id.; Carter, 566 F.3d at 975. Because the pretrial intervention program reduced Castillo’s expectation of privacy and gave *1306 Florida strong .interests in conducting a search, we conclude that Kurtz too needed only reasonable suspicion.
Kurtz had reasonable suspicion based on the tip and Castillo’s behavior that Castillo possessed a firearm in violation of his pretrial intervention agreement. Castillo’s former mother-in-law, who served as a victim’s advocate for the county, told Kurtz about the MySpace page and faxed him a copy of it. The page depicted a man who appeared to be Castillo holding a gun and extending his middle finger while wearing tactical gear. The author of the page told Castillo’s ex-wife and her family, “FUCK YOU!” and threatened to “get all of [them].” When Kurtz arrived at the house, it took about 15 minutes for Castillo to open the door. Taken together, these facts gave Kurtz reasonable 'suspicion to search the house. Because the search of Castillo’s house was constitutional, he cannot establish deficient performance or prejudice for his counsel’s failure to move to suppress the fruits of the search or dismiss the indictment.
We do not consider Castillo’s argument that the search warrant was invalid because it failed to identify a crime, and we strike the pprtions of his briefs that address this issue. Our review is limited to the issue specified in the certificate of appealability. Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir.1998), The certificate specified only the “claim that counsel rendered ineffective assistance by failing to move for suppression of the evidence obtained through the fruits of a warrantless search of his house, or for failing to move for dismissal of the indictment.” The certificate does not encompass defects in the warrant that are unrelated to the earlier search without a warrant.
IV. CONCLUSION
We AFFIRM' the denial óf Castillo’s motion to vacate his sentence.