[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14806
_____

D.C. Docket No. 5:17-cr-00229-SLB-JEO-1

UNITED STATESOF AMERICA,

Plaintiff-Appellee,

versus

CEDRIN FARODD CARTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 12, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and ANTOON,[*]
District Judge.

---

[*] Honorable John Antoon II, District Judge for the Middle District of Florida, sitting by
designation.

GRANT, Circuit Judge:

More than a decade ago, Cedrin Carter pleaded guilty in a state court to distributing cocaine and to distributing marijuana.  The question now is whether he pleaded to committing those offenses at different times.  That is what will determine if he qualifies as a career criminal under the Armed Career Criminal Act (ACCA).  If those two felony convictions were for offenses committed "on occasions different from one another," he qualifies; if not, he does not.  The district court saw two offenses, but Carter insists it was one.  As he sees it, the cocaine and marijuana crimes might have happened at the same place and at the same time—meaning that they would together count as only one predicate conviction for ACCA instead of two.

Carter's indictment from that prior case tells a different tale.  The State charged him with two counts of drug distribution.  One count—but not the other—alleged that Carter's sentence should be enhanced because his crime was committed near both a school and public housing.  That matters because the same location-based enhancements would have applied to both offenses if they had been committed in the same place.  Under these circumstances, it is more likely than not that Carter committed his crimes in different places.  And under our precedent, that is enough to support a finding that he committed distinct offenses.

I.

This case's story begins in 2009, when Carter stood in state court to admit to violating his probation and to plead guilty to two counts of drug distribution.  "One of the conditions of your probation," the state court reminded Carter, was "that you

not commit an offense—a new criminal offense." But according to the State, Carter had not kept his end of the bargain. The government's "delinquency petition" alleged that Carter had broken probation when he distributed marijuana and cocaine. Although he denied the marijuana charge at that point, Carter admitted to violating probation by distributing cocaine, saying "Yeah, I sold that."

With Carter's probation violation established, the state court then turned to the alleged distribution offenses themselves. The court read Carter's two-count indictment into the record.[1] Count one of the indictment charged Carter with distributing cocaine, in violation of § 13A-12-211 of the Code of Alabama. Count two charged him with violating the same statute by distributing marijuana. But unlike the cocaine charge, the marijuana charge also alleged that Carter sold the drug within three miles of a school and within three miles of public housing. *See* Ala. Code §§ 13A-12-250 (school), 13A-12-270 (public housing).

Those additional violations meant that Carter's sentence for the marijuana offense would have to be enhanced by ten years—five years for each violation. *See* Ala. Code §§ 13A-12-250, 13A-12-270. As he had done moments before, Carter admitted to distributing cocaine but denied distributing marijuana. He quickly changed his tune after the court warned that pleading not guilty to the marijuana charge would mean that the "deal is off." Carter pleaded guilty to both counts.

---

[1] Besides these two counts, the State lodged two other charges against Carter for unlawful distribution of a controlled substance. Those charges were dismissed two days after the plea colloquy.

Following Carter's pleading, the state court asked the government "to narrate a factual basis for those pleas." The prosecutor said that Carter had sold marijuana in March of 2009 and had sold it again in April of the same year. The proffer did not match up with the indictment: Carter pleaded guilty to only one count of distributing marijuana—the other count was for distributing cocaine. Apparently not noticing, the state court pressed on: "Mr. Carter, again, did you plead guilty voluntarily?" Carter answered yes.

Fast forward eight years. Carter again ran into some trouble with the law, although this time his actions landed him in federal court. A jury found him guilty of simple possession of marijuana and possession of a firearm by a convicted felon. When it came time for sentencing, the federal government and Carter advanced conflicting theories about Carter's 2009 plea colloquy. The government's Presentence Investigation Report claimed that Carter had pleaded guilty to two distinct drug felonies in 2009, which, combined with a third conviction for drug distribution from another pleading, qualified Carter as a career offender under ACCA. Carter objected, arguing that he never confirmed the State's factual narrative because that proffer was given after he pleaded guilty. And nothing besides the prosecutor's statement in the proffer that the two offenses happened in March and April, he said, showed that his cocaine and marijuana offenses happened on different occasions. That meant that those offenses could only qualify as a single drug felony, leaving him with two predicate felonies for ACCA rather than three.

The district court disagreed. Although it recognized "some confusion" between the state court and the prosecutor in the 2009 case, the district court stated, "it was clear to the defendant, in my view, based on the reading of the transcript, that he understood he was pleading to two separate transactions on two different dates." Carter now appeals.

## II.

We review de novo the district court's legal determination that prior convictions meet ACCA's different-occasions requirement. *United States v. Sneed*, 600 F.3d 1326, 1330 n.5 (11th Cir. 2010). "We may affirm on any ground supported by the record." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citation omitted).

## III.

For an ACCA enhancement to stick, "the defendant must have been convicted of three violent felonies or serious drug crimes 'committed on occasions different from one another.'" *United States v. Canty*, 570 F.3d 1251, 1255 (11th Cir. 2009) (quoting 18 U.S.C. § 924(e)(1)). Carter does not contest the finding that his felonies were serious drug offenses, so we need only decide whether he committed his prior felonies on different occasions. Using "reliable and specific evidence," the government must prove that Carter's "prior convictions more likely than not arose out of" distinct crimes. *United States v. McCloud*, 818 F.3d 591, 596 (11th Cir. 2016). Considering Carter's indictment, admissions, and Alabama law, we conclude that it is more likely than not that his marijuana and cocaine offenses were committed separately.

5

Our starting point is ACCA's text, which requires that the predicate offenses be "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  This language requires that "the crimes were committed successively rather than simultaneously."  *Canty*, 570 F.3d at 1255.  And differences "in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small."  *United States v. Pope*, 132 F.3d 684, 690 (11th Cir. 1998).  For example, we held in *United States v. Weeks* that two burglaries committed "within close proximity to one another" and on the same day still counted as separate offenses.  711 F.3d 1255, 1261 (11th Cir. 2013), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013).  The defendant there urged us to reach a different conclusion, contending that the buildings he burglarized were "only 56 feet apart from one another, a distance that could be covered on foot in approximately 13 seconds."  *Id.* at 1257–58.  But "even small gaps in time and place," we said, "are sufficient to establish separate offenses."  *Id.* at 1261.

To see if those gaps exist, we can look only to a limited set of evidence, called *Shepard* documents.  *Sneed*, 600 F.3d at 1331–33.  The *Shepard* sources include "the terms of the charging document, [and] the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant," as well as a "comparable judicial record of this information."  *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Before going into our own analysis, we should touch on how the district court's approach fared in light of these principles.  The court grounded its reasoning on the dates given by the state prosecutor during Carter's 2009 plea

6

colloquy.  Although it is certainly appropriate to rely on the transcript of the plea colloquy, *Shepard* allows a court to consider the "factual basis for the plea" only when it "was confirmed by the defendant."  544 U.S. at 26.  We have doubts about whether Carter "confirmed" the State's factual claims.  On the one hand, he did not object to the statement that his crimes were committed in different months; he also confirmed that his plea was voluntary.  On the other hand, he pleaded guilty before those allegations were made, not after.  The prosecutor's statements may have been "prone to error" because Carter had no reason to correct them.  *Cf. Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016).  That concern is heightened because the prosecutor's description was off the mark in at least one respect—Carter pleaded guilty to one marijuana count and one cocaine count, not two marijuana counts—yet the prosecutor's statement remained uncorrected.  But we need not decide if the district court's reasoning got it exactly right; our analysis, though different, leads us to the same bottom line.

We begin with the fact that Alabama law contains location-based enhancements for selling drugs near a school or public housing.[2]  By statute, a court must tack on "a penalty of five years incarceration" for selling controlled substances within three miles of a school or public housing, and the enhancements must be in "addition to any penalties" already "provided by law for any person convicted of an unlawful sale of a controlled substance."  Ala. Code §§ 13A-12-

---

[2] On appeal, the government offers another reason to affirm the district court's judgment: Carter's crimes, it says, could not have been charged as two offenses if they were committed at the same time.  Given our resolution of the case based on the enhancements, we need not consider that argument.

250 (school), 13A-12-270 (public housing).  So if two controlled substances were sold within three miles of a school and public housing, both offenses would qualify for both enhancements.  *See Vann v. State*, 880 So. 2d 495, 500–01 (Ala. Crim. App. 2003).

But even though Carter's distribution of cocaine and marijuana were charged as two separate offenses, only his marijuana offense was charged with these location-based enhancements.  It's not as if the enhancements slipped the prosecutor's mind or were held back for some later time in the litigation: the State charged them both—but only for one offense.  Nothing in the indictment or the plea colloquy even hints at these enhancements applying to Carter's cocaine offense.  The record's silence is telling.  As alleged in the charges that Carter admitted, one offense took place by a school and by public housing; the other did not.  That is enough to establish that they were distinct offenses.

Our conclusion is not upset by the fact that the location-based enhancements could have applied only if a "defendant is found to have sold" drugs.  *See Ex parte Mutrie*, 658 So. 2d 347, 350 (Ala. 1993).  Carter argues that this legal requirement—that the drug must be sold (instead of distributed by some other method) to qualify for the enhancement—raises the possibility that his two offenses happened in the same location.  He says that means he could have sold only marijuana and might have distributed cocaine in some other way at the same time.  Perhaps he gave it away rather than sold it?  Setting aside whether such a stroke of generosity on Carter's part is at all likely, it runs headlong into his own explicit admission to the state court about the cocaine: "Yeah, I sold that."

8

Because he admitted to selling the cocaine, the enhancements would have applied to both the marijuana and cocaine offenses if Carter had committed them at the same time and place. The simplest reason why only one offense was charged with location-based enhancements is also the most likely: Carter's crimes happened in different places.

What we have said so far shows that Carter more likely than not committed his crimes in different locations. Our conclusion is only strengthened by the fact that, in case after case, Alabama's appellate courts have emphasized that these enhancements must be applied by state trial courts if evidence supports them. *See, e.g.*, *Vann*, 880 So. 2d at 501; *Cunny v. State*, 629 So. 2d 693, 696 (Ala. Crim. App. 1993). And Alabama appellate courts have highlighted a related principle—prosecutors must flag mandatory enhancements when they are in play. A prosecutor "has a legal duty as an officer of the court to inform the court" of known facts that would trigger "mandatory sentencing provisions." *Maye v. State*, 472 So. 2d 688, 690 (Ala. Crim. App. 1985); *see also Broaden v. State*, 645 So. 2d 368, 369 (Ala. Crim. App. 1994).

The prosecutor's obligation to raise the location-based enhancement remains even if the defendant pleads guilty. *Freeman v. State*, 647 So. 2d 90, 91 (Ala. Crim. App. 1994). A prosecutor would "perpetrate a fraud on the court by intentionally omitting" these "details about a case." *Ex parte Johnson*, 669 So. 2d 205, 207 (Ala. 1995).[3] In short, the State was expected (if not required) to bring up

---

[3] Months before Carter pleaded guilty in state court, an Alabama appellate court indicated in a footnote that the "State may elect to forgo the application of mandatory fines and other enhancements." *Durr v. State*, 29 So. 3d 922, 922 n.1 (Ala. Crim. App. 2009). The statement

9

the location-based enhancements, so we can expect that it would have done so. And it did bring them up when it charged Carter, but only for Carter's sale of marijuana rather than his sale of cocaine.

So Carter's offenses most likely happened at different places and, by extension, different times. Perhaps seeing the writing on the wall, Carter does not even try to explain how his crimes could have been committed at different locations and still be part of the same occasion. That gap in space and time makes his two offenses separate occasions for purposes of ACCA. *See Pope*, 132 F.3d at 690. Given all this, it is more likely than not that his crimes were not part of the same criminal episode; they happened on different occasions. Although our reasoning differs from that of the district court, our answer does not.

**AFFIRMED.**

---

seemed to lean on *Ex parte Johnson*, yet that case only held that a State was bound to a plea agreement even when the prosecutor forgot to address a mandatory enhancement. "In any event," as the author of *Durr* later recognized, the stray sentence "was entirely dicta." *Hall v. State*, 223 So. 3d 977, 992 n.14 (Ala. Crim. App. 2016) (Kellum, J., dissenting). Whatever value the dicta has, *Durr* reconfirmed that the State must still raise the enhancements: the State's "waiver of the application of the mandatory fines and other enhancements . . . should be explicitly set out in the plea agreement." *Durr*, 29 So. 3d at 922 n.1.

10