[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15179

_____

D.C. Docket Nos. 1:11-cv-02294-TWT; 1:07-cr-00138-TWT-JSA-2

STANLEY JOSEPH THOMPSON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 19, 2020)

**ON PETITION FOR REHEARING**

Before  JORDAN, GRANT, and SILER,[*] Circuit Judges.

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

SILER, Circuit Judge:

Petitioner Stanley Joseph Thompson has moved for panel rehearing and/or rehearing en banc of our prior decision in this case, *see Thompson v. United States*, 791 F. App'x 20 (11th Cir. 2019). Upon reconsideration, we vacate the prior opinion, grant panel rehearing on two issues: (1) the *Miranda* warning issue arising from questioning during the traffic stop and (2) the severance issue, and file this amended opinion. In all other respects, the petition for panel rehearing is denied.

Stanley Thompson appeals the district court's denial of his § 2255 motion to vacate his sentence and his motion for a new trial. We affirm.

In 2007, the Atlanta area experienced a string of robberies that police believed were connected. Two men held up a Taco Bell, before six separate area banks were robbed. R. 145 at 29-30; R. 11. In one robbery, a witness saw someone get in and out of a red Chevrolet Blazer. The witness recorded the license plate, and police determined the car belonged to Leary Robinson's estranged wife.

Shortly after a robbery at SunTrust Bank, Atlanta Police Detective Capus Long stopped the Blazer along Interstate 20. R. 146 at 281-82. Thompson was driving; Edwin Epps was the passenger. Officers ordered Thompson and Epps out of the car and began asking questions. Thompson said the car was "a hot box," and Detective Long understood that to mean that the car was stolen. *Id.* at 283.

Thompson was placed in the police car where Long showed Thompson a photograph of Leary Robinson. *Id.* at 284. Thompson said that Robinson was staying at the Intown Suites, and Long gave that information to the FBI. *Id.* at 284-85.

FBI Agent Chad Fitzgerald then went to Intown Suites, where he learned from the motel clerk that both Robinson and Thompson had been staying there. R. 146 at 382; 147 at 414. When agents moved in to arrest Robinson, a standoff ensued, but ended after extended negotiations. R. 146 at 289-91, 310-315. Meanwhile, police had taken Thompson to the Fulton County Jail and received Thompson's consent to a search of his room at the Intown Suites. R. 147 at 424. During that search, police found a pistol that they believed was used in the robberies. R. 146 at 302-03; 305-06. Police also found a baseball hat, camouflage pants, and a yellow tablet all believed to be connected to the crimes. R. 146 at 300-21. Police later searched the Blazer and found several items of clothing used in the robberies. *Id.* at 296-319.

Robinson admitted to the robberies except for the Taco Bell holdup and one of the bank robberies. R. 146 at 327-31. He also admitted using a gun during the crimes and that he used the Blazer in most of them. A federal grand jury returned a 12-count indictment against Robinson and Thompson, charging them with all eight robberies. R. 11.

After a joint jury trial, Thompson was convicted of one count of aiding and abetting an interference with commerce by robbery under 18 U.S.C. § 1951, four

3

counts of aiding and abetting bank robbery under 18 U.S.C. § 2113(a), two counts of aiding and abetting bank robbery with a dangerous weapon under 18 U.S.C. § 2113(a), (d), and three counts of aiding and abetting the use or carrying of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A).  R. 109.  He was found not guilty on two other robbery-related counts.  *Id.*

We affirmed on direct appeal.  *United States v. Thompson*, 610 F.3d 1335 (11th Cir. 2010).  Thompson then filed this motion to vacate, set aside or correct his sentence under § 2255.  R. 168; 171.

Thompson argues that trial counsel was ineffective for (1) waiving a suppression hearing regarding whether he had made statements to police without being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), (2) admitting Thompson's guilt to robbery during closing arguments; and (3) failing to move to sever his trial from Robinson's trial.  R. 168 at 7-10.

Thompson also sought a new trial.  That request stemmed from a Freedom of Information Act request that Thompson filed with the U.S. Department of Justice, which Thompson claimed showed that his fingerprints were not found on demand notes used in the bank robbery.

A magistrate judge issued a report and recommendation to the district court, suggesting that Thompson's motions be denied.  R. 189.  And without holding an evidentiary hearing, the district court adopted the report and recommendation,

denied Thompson's objections, and entered a final judgment.  R. 192, 193.  The district court also denied a certificate of appealability (COA).  This court granted a COA on three issues:

(1) Whether Thompson received ineffective assistance of counsel with respect to counsel's failure to challenge police officers' questioning of him without reading him the requisite *Miranda* warnings.

(2) Whether Thompson received ineffective assistance of counsel based on counsel's decision to concede guilt to the charges associated with the Taco Bell robbery, due to counsel's erroneous belief that the government had insufficient evidence to prove that the armed robbery affected interstate commerce.

(3) Whether Thompson received ineffective assistance of counsel based on counsel's failure to move for severance from codefendant Robinson's trial.

R. 213; 216

In § 2255 motions, we review counsel's effectiveness de novo, *LeCroy v. United States*, 739 F.3d 1297, 1312 (11th Cir. 2014), and denial of an evidentiary hearing for abuse of discretion, *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016).  Courts should grant such hearings "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Id.* (quoting 28 U.S.C. § 2255(b)).   Abuse of discretion review also applies to a denial

5

of a new trial motion.  *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc).

To prevail on an ineffective-assistance-of-counsel claim Thompson must show that his counsel's performance (1) was deficient, and (2) resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *Strickland*'s deficiency prong is met only when counsel's performance fell below an objective reasonableness standard.  *Id.* at 688.  Courts "strongly . . . presume[]" that counsel provides adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  Thompson must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  *LeCroy*, 739 F.3d at 1312-13 (quoting *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004)).  In the ineffective assistance of counsel context involving a constitutional suppression issue, prejudice is shown only when the petitioner demonstrates that "there is a reasonable probability that the verdict would have been different absent the excludable evidence."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

*1. Miranda Warnings*.  Thompson argues his attorney first erred in failing to challenge the police officers' questioning of him without warnings under *Miranda*

6

*v. Arizona*, 384 U.S. 436 (1966). Thompson asserts that authorities failed to provide *Miranda* warnings on two separate occasions. First, he argues that police interrogated him without *Miranda* warnings during a traffic stop. Second, Thompson argues that agents failed to provide *Miranda* warnings before seeking his consent to search his hotel room.

### a. Questioning During the Traffic Stop

According to Thompson, the police did not read him his *Miranda* rights before questioning him after pulling him over and detaining him. What's more, Thompson says his counsel failed to investigate this *Miranda* problem and never sought suppression of Thompson's statements.

The district court rejected this argument, holding that Thompson's discussion with Detective Long fell under *Miranda*'s "routine booking exception." Under that doctrine, incriminating information can be used against a defendant who was not given his *Miranda* warning when the information came in response to police officers' questions designed to obtain basic information. *United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991). We agree with the district court that some of the questions asked by the detective, such as where Thompson was living, satisfy that exception.

Thompson challenges his attorney's failure to move to suppress his responses to other questions as well, however, including when the detective showed him a

picture of Robinson and asked him where Robinson was. We concluded that we need not address whether Thompson was entitled to *Miranda* warnings before those questions—because even if he was, he is unable to establish prejudice with regard to his attorney's failure to move to suppress his responses. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The evidence in this case included a witness testifying that Robinson introduced Thompson as his "partner," a photo and video showing Thompson's and Robinson's unmasked faces as they robbed a Taco Bell, and surveillance photos and videos showing Robinson robbing several banks. Thompson's fingerprints were also found on some of the demand notes used in those bank robberies. For three of the bank robberies, witnesses testified that the robber entered and exited a getaway car from the passenger side—indicating that a getaway driver assisted in the robberies. Several witnesses identified the getaway car as a red Chevrolet Blazer—the same car that officers found Thompson driving when they arrested him. And a later search of the vehicle revealed clothing that matched that worn by the bank robbers. Because Thompson cannot establish prejudice in light of the strength of the evidence in this case, Thompson cannot show that his attorney's decision not to move for suppression of his initial responses amounts to ineffective assistance of counsel.

    b. *Consent to Search Thompson's Hotel Room*

8

Thompson also contends that his counsel was ineffective for failing to object to admission of statements and physical evidence that arose from a search of Thompson's hotel room at Intown Suites.

During the investigation and search for co-defendant Robinson at Intown Suites, FBI agents learned from hotel staff that Thompson had also been staying at Intown Suites, in room 463. After Robinson's arrest, agents went to the Fulton County jail to seek Thompson's consent to search his hotel room.

At the jail, agents identified themselves and asked Thompson if he had been residing in room 463 at Intown Suites. According to agents, Thompson verified that he had been staying in room 463. Thus, agents presented Thompson with an FBI FD26 consent to search form, which Thompson signed. Subsequently, the agents searched Thompson's hotel room and discovered evidence that was linked to the robberies they were investigating.

Thompson claims that the consent to search was illegally obtained because he was in custody when agents asked for his consent and he was not read *Miranda* warnings before he gave consent. But Thompson has failed to demonstrate that counsel's failure to object to admission of evidence obtained during this search rises to the level of ineffective assistance of counsel.

Initially, Thompson has failed to demonstrate that counsel's failure to object to admission of this evidence constitutes deficient performance because *Miranda*

9

warnings were not required prior to the agents seeking consent to search at the jail. This court has previously noted that consent to search is not a self-incriminating statement. *See United States v. Hidalgo*, 7 F.3d 1566, 1568 (11th Cir. 1993). As such, when agents asked Thompson to confirm that he had been staying in room 463 and if he would give consent to search, they could not have known or suspected that Thompson's statement would illicit an incriminating response. Of course, it is true that the subsequent search of Thompson's hotel room led to discovery of incriminating physical evidence, but Thompson's response to agents' questions about consent to search could not have been reasonably expected to illicit an incriminating statement. As a result, Thompson's argument that this evidence should have been suppressed has no merit.

And, since Thompson's argument has no merit, his trial counsel cannot be found ineffective for failure to raise a meritless argument. *See, e.g.*, *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that counsel was not ineffective for failing to raise a meritless argument); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).

Ultimately, agents were not required to provide *Miranda* warnings prior to asking Thompson for his consent to search his hotel room. As such, counsel's failure to object to admission of evidence obtained as a result of that consent did not fall below an objective standard of reasonableness.

10

Moreover, even if counsel's performance was deficient, Thompson cannot show that he was prejudiced by counsel's failure to object or move to suppress evidence. Under the inevitable discovery doctrine, the evidence that Thompson seeks to suppress would have been discovered by lawful means, even assuming the consent to search was obtained unlawfully.

The inevitable discovery exception to the exclusionary rule allows evidence that was illegally obtained to be admitted if the government can demonstrate by a preponderance of the evidence that such evidence would have been inevitably or ultimately discovered by lawful means that were being actively pursued before the illegal conduct occurred. *See Nix v. Williams*, 467 U.S. 431, 444 (1984).

Here, agents would have inevitably obtained the physical evidence discovered from the search of Thompson's hotel room, even without Thompson's consent to search. When agents asked for Thompson's consent to search, both Thompson and Robinson had been arrested, and Robinson had confessed to some of the robberies. Additionally, while Robinson was barricaded in room 463—the hotel room that belonged to Thompson—agents saw Robinson brandish a pistol. But the pistol was not discovered when Robinson was taken into custody. As a result, officers had probable cause to obtain a search warrant to search Thompson's room, even without Thompson's consent to search. Furthermore, as the district court found, the public safety exception would have justified a warrantless search of Thompson's hotel

11

room since the weapon that Robinson brandished was not found on his person when he was arrested.

In sum, even if Thompson could demonstrate that agents illegally obtained his consent to search his hotel room, he cannot demonstrate that this evidence should be suppressed based on the inevitable discovery exception. As a result, even if counsel's failure to object and pursue suppression of the physical evidence was deficient performance, Thompson cannot demonstrate that he was prejudiced by counsel's performance. As a result, Thompson has failed to demonstrate that counsel's failure to object to admission of evidence obtained during a search of his hotel room rises to the level of ineffective assistance of counsel.

*2. Admitted Guilt in Taco Bell Robbery.* In *McCoy v. Louisiana*, 138 S. Ct 1500 (2018), the Supreme Court held that criminal defendants "must be allowed to make [their] own choices about the proper way to protect [their] liberty," which includes the right to "insist on maintaining innocence at the guilt phase." *Id*. at 1508. When counsel does not allow a defendant to maintain his innocence, defendant's Sixth Amendment rights are violated. *Id.* Thompson argues that counsel made a unilateral decision to admit guilt, which was against Thompson's wishes.

The government argues that this argument is outside the COA, but even if we considered it, Thompson fails because his counsel did not admit guilt. Instead, counsel took a trial strategy, arguing that the government could not prove the

12

interstate commerce element of Hobbs Act robbery.  That does not rise to the level of admitting guilt since counsel denied an essential element of the crime.

Turns out, of course, that Thompson's counsel was wrong—so wrong, in fact, that Thompson thinks he received constitutionally deficient assistance.  Under the Hobbs Act, it is a crime to affect commerce by robbery.  18 U.S.C. § 1951.  Only a small or minimal effect on commerce is needed to prove that element of the crime, *see United States v. Gray*, 260 F.3d 1267, 1272 (11th Cir. 2001), which occurs when, for example, the robbery reduces the assets of a company involved in interstate commerce, *see United States v. Ransfer*, 749 F.3d 914, 936 (11th Cir. 2014).

So, as Thompson argues, his counsel was incorrect regarding the interstate commerce element of Hobbs Act robbery—the Taco Bell incident certainly could meet the minimal threshold required.  But Thompson still fails to establish prejudice, a necessary component of his ineffective assistance claim.  *See Strickland*, 466 U.S. at 687.  As the district court determined, a mound of evidence supported Thompson's involvement in the Taco Bell robbery—including pictures and videotape.  Indeed, nothing suggests that the jury would have reached a different outcome on the Taco Bell count or any other charge.  Thus, Thompson has not demonstrated prejudice and his claim fails.

*3. Failure to Move for Severance*.  Finally, Thompson argues that his counsel was ineffective because he failed to move to have the trial severed from his

13

codefendant, Robinson.  Thompson says that he suffered prejudice because the jury heard overwhelming evidence against Robinson, so the jury must have thought Thompson was also involved.

But again, Thompson fails to demonstrate ineffective assistance. *See id.* First, he cannot show deficient performance, because the severance likely would not have been granted.  The government may try codefendants together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(a).  No doubt, that is this case.  True, defendants can move for severance, but a court will grant such a motion only when joinder will result in prejudice.  Fed. R. Crim. P. 14(a). And usually "people who are charged together are tried together." *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) (citation omitted).

Nor can Thompson establish that had the severance been granted the result of trial would have been different.  Thus, he cannot meet *Strickland*'s prejudice prong. 466 U.S. at 687.  Even if Thompson would have had slightly better odds at trial had he been tried alone, that does not mean the outcome would have been different—a burden that Thompson must carry in his § 2255 motion.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993).

Moreover, counsel's performance was not deficient for not moving to sever after Robinson testified because Robinson neither identified nor implicated

14

Thompson. The Supreme Court has told us that "where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." *Nelson v. O'Neil*, 402 U.S. 622, 629–30 (1971). The same principle, we believe, applies with equal force here.

During his testimony, Robinson refused to implicate Thompson while on the witness stand. Robinson denied that Thompson participated in the Taco Bell robbery; refused to identify Thompson in a photo; declined to name Thompson as his get-away driver; and rejected assertions that Thompson was the person he had previously identified as "J.T." This testimony was bolstered during cross-examination by Thompson's counsel, as Robinson again testified that he never provided Thompson's name to a government agency and never told anyone what "J.T." stood for.

Therefore, Robinson's testimony did not impair any of Thompson's rights. *See Nelson*, 402 U.S. at 626 ("the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-examined on the witness stand at trial"); *Smith v. Kelso*, 863 F.2d 1564, 1569 (11th Cir. 1989) ("Severance is compelled only when a co-defendant has refuted those portions of a co-defendant's case that are necessary to

15

find the defendant not guilty of the particular charged offense.").  Even if there was some other prejudice from Robinson's testimony, we need not grant a separate trial "unless the trial judge could not cure the prejudice."  *Smith*, 863 F.2d at 1572.  As there was no such risk in this case, counsel was not deficient for not moving for severance at that point.  *See United States v. Bradley*, 905 F.2d 1482, 1488–89 (11th Cir. 1990) (explaining that a mid-trial severance under Rule 14 requires a "manifest necessity").

4. *Motion for a New Trial*.  Finally, Thompson argues he is entitled to a new trial because he has newly discovered evidence contradicting the government's contention that his fingerprints were on demand notes used in two of the robberies.  The district court can grant a new trial based on newly discovered evidence if that motion is filed within three years of the verdict, *see* Fed R. Crim. P. 33(a)(1), and the defendant shows: (1) the evidence was discovered after the trial; (2) the defendant exercised due diligence to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is of such a nature that a new trial would probably produce a new result, *United States v. Taohim*, 817 F.3d 1215, 1223 (11th Cir. 2013).  Such motions are highly disfavored and rarely granted.  *See Campa*, 459 F.3d at 1151.

16

Thompson received information from a FOIA request that the FBI was not in possession of so-called "lift images" of Thompson's fingerprints that the government contended were on the demand notes. This information, Thompson argues, shows that his fingerprints were not on the demand notes, and thus the government's evidence at trial is undermined.

But the document that Thompson relies on—an FBI declaration—says only that the lift prints Thompson requested "were taken and processed by the Cobb County Police Department (CCPD) rendering any processing by the FBI unnecessary." R. 187, Ex. A at 8-9. And lift prints are just one type of print. The FBI declaration further explains that it had latent prints on a demand note used during the robbery, and those prints were linked to Thompson. *Id.* at 10. The only information the declaration presents is that the only "lift prints" in the case were kept by CCPD, while the FBI had other prints on the demand notes.

This is hardly newly discovered evidence that would have affected the trial. *Taohim*, 817 F.3d at 1223. And the district court's denial of the new trial motion does not amount to an abuse of discretion. After all, the information shows that *both* the FBI and CCPD had fingerprint information. This does not undermine the jury's verdict and is not a basis for granting a new trial.

Upon reconsideration, we GRANT the motion for panel rehearing on the Miranda warning issue concerning questioning during the traffic stop and the

17

severance issue, VACATE the prior panel opinion, *Thompson v. United States*, 791 F. App'x 20 (11th Cir. 2019), and issue this amended opinion.  In all other respects, the petition for panel rehearing is DENIED.  We AFFIRM the judgment of the district court.

JORDAN, Circuit Judge, concurring in part and dissenting in part:

With one exception, I agree with the court's opinion denying rehearing. I would grant rehearing on Mr. Thompson's claim under *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), because I think we made a mistake in our original panel opinion. Let me explain why.

In our opinion, we rejected Mr. Thompson's *McCoy* claim and concluded that "counsel did not admit guilt" because, although he conceded a number of factual elements, he "denied an essential element of the crime [i.e., the interstate commerce element]." *Thompson v. United States*, 791 F. App'x 20, 27 (11th Cir. 2019). I believe Mr. Thompson is correct in asserting in his petition for rehearing that our *McCoy* analysis was flawed.

In *McCoy*, a capital case, the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." 138 S. Ct. at 1505. Nevertheless, his counsel—having concluded that the evidence against the defendant was "overwhelming" and that "absent a concession at the guilt stage," it would be "impossible to avoid" a death sentence at the penalty phase— told the jury that the defendant had caused the victims' deaths and that he had "committed these crimes." *Id.* at 1506–07. The Supreme Court held that a defendant has the right, under the autonomy guaranteed by the Sixth Amendment, to refuse to admit or concede guilt. So when a defendant "expressly asserts" that he wants "to

maintain innocence of the charged criminal acts, his lawyer must abide by that [decision] and may not override it by conceding guilt." *Id.* at 1509. *See also id.* at 1510 ("[W]e agree with the majority of state courts of last resort that counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission.").

The Court also held that counsel's concession of guilt, in the face of the defendant's objection, constituted structural error that necessitated a new trial without a showing of prejudice. *See id.* at 1511–12. As Justice Alito's dissent pointed out, the Court reached this conclusion even though counsel had not conceded guilt as to all of the elements necessary for murder—counsel admitted that the defendant committed one element of the offense, i.e., that he "shot and killed the three victims," but "strenuously argued that [the defendant] was not guilty of first-degree murder because he lacked the intent (the *mens rea*) required for the offense." *Id.* at 1512 (Alito, J., dissenting).

Here, trial counsel conceded in his opening statement and closing argument that Mr. Thompson robbed the Taco Bell. But he argued (based on his apparently mistaken legal judgment) that the government had not proven the interstate commerce element of Hobbs Act robbery. In other words, like the lawyer in *McCoy*, Mr. Thompson's counsel admitted several elements of the offense while challenging another element. So the factual and procedural context here is just like *McCoy*, and

I do not believe we can reject Mr. Thompson's argument by saying that trial counsel only admitted guilt on some elements of the crime.

In his verified 28 U.S.C. § 2255 motion—which functioned like an affidavit, *see, e.g. Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019)—Mr. Thompson alleged that trial counsel conceded guilt as to the Taco Bell robbery "against [his] wishes." Trial counsel allegedly advised Mr. Thompson that the best strategy was to admit guilt on the Taco Bell robbery while challenging the interstate commerce element of the robbery.

Given the verified motion to vacate, Mr. Thompson is entitled to an evidentiary hearing. *See* 28 U.S.C. § 2255(b) (providing for a hearing "[u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief") (emphasis added). First, although the district court characterized trial counsel's concession strategy as reasonable, that strategy was likely based on a misunderstanding of the law regarding the interstate commerce element, and "[d]ecisions that are based on mistaken beliefs certainly are neither strategic nor tactical." *Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (citation omitted). Second, although Mr. Thompson stated in his verified § 2255 motion that conceding guilt was against his wishes, the record is not clear as to what Mr. Thompson said (or how he reacted) when trial counsel purportedly told him that admitting guilt on the Taco Bell robbery was the best trial strategy. If Mr. Thompson

21

rejected counsel's advice and continued to insist that there be no concessions as to the Taco Bell robbery, then counsel's unilateral choice was likely structural error that violated Mr. Thompson's autonomy as guaranteed by the Sixth Amendment. *See McCoy*, 138 S. Ct. at 1511–12. On the other hand, if Mr. Thompson said nothing about counsel's proposed strategy, then counsel's performance might need to be evaluated under *Strickland v. Washington*, 466 U.S. 669 (1984), and its progeny. *See Florida v. Nixon*, 543 U.S. 175, 178, 181, 192 (2004).

In my view, we should remand for an evidentiary hearing so that the district court can sort out the facts and evaluate the applicability of *McCoy*. I therefore respectfully dissent as to the denial of rehearing on Mr. Thompson's *McCoy* claim.

22