[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10267
_____

D.C. Docket No. 7:18-cr-00066-LSC-JEO-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA RESHI DUDLEY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 22, 2021)

Before NEWSOM and BRANCH, Circuit Judges, and RAY,* District Judge.

BRANCH, Circuit Judge, delivered the opinion of the Court, in which RAY, District Judge, joined, and NEWSOM, Circuit Judge, joined in all but Part III.A.

_____

* The Honorable William M. Ray II, United States District Judge for the Northern District of Georgia, sitting by designation.

NEWSOM, Circuit Judge, filed a dissenting opinion.

BRANCH, Circuit Judge:

Joshua Dudley pleaded guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). The district court imposed the Armed Career Criminal Act's ("ACCA") sentencing enhancement.[1] Dudley contested the application of the ACCA enhancement, arguing that there was insufficient evidence to establish that his prior felony offenses were committed on different occasions from one another. The district court disagreed, relying on the prosecutor's factual proffer from Dudley's state plea colloquy concerning the prior offenses. Dudley argues on appeal that the district court improperly relied on the unconfirmed factual proffer from his state plea colloquy to determine that the offenses were committed on different occasions. Dudley also argues for the first time on appeal that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), necessitates vacating his guilty plea to being a felon in possession

---

[1] The ACCA provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

of a firearm. After careful consideration and with the benefit of oral argument, we conclude that the district court did not err in considering the prosecutor's factual proffer from Dudley's state plea colloquy concerning the dates of his prior offenses when conducting the ACCA's different-occasions inquiry because Dudley implicitly confirmed the factual basis for his plea. We also conclude that Dudley is not entitled to relief on his *Rehaif*-based challenge. Accordingly, we affirm.

## I.    Background

In 2018, Dudley was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2] The indictment noted that Dudley had several prior Alabama felony convictions. Dudley did not object to the indictment. Dudley subsequently pleaded guilty. In the written plea agreement, Dudley admitted that he possessed a firearm during a gas station robbery after being convicted previously of several Alabama felonies. The plea agreement did not include the dates or any other details of Dudley's prior felony convictions.

Prior to Dudley's sentencing, the United States Probation Office prepared a presentence investigation report ("PSI"), which indicated that Dudley had at least three prior Alabama convictions that qualified as violent felonies for purposes of

---

[2] The indictment did not reference 18 U.S.C. § 924(a), which provides that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to 10 years. 18 U.S.C. § 924(a)(2).

the ACCA and were committed on different occasions from one another. Specifically, the PSI detailed that Dudley was convicted on December 31, 2013, in Alabama of two counts of second-degree assault in case no. 11-2012; three counts of second-degree assault in case no. 11-2610; and one count of second-degree assault in case no. 11-2366. According to the PSI, Dudley's plea colloquy from the Alabama combined plea proceeding indicated that the assaults in case no. 11-2012 occurred on May 8, 2011,[3] the assaults in case no. 11-2610 occurred on July 13, 2011, and the assault in case no. 11-2366 occurred on July 26, 2011. Dudley's resulting guidelines range was 188 to 235 months' imprisonment. As a result of the ACCA enhancement, Dudley faced a statutory minimum term of 15 years' imprisonment and a maximum term of life imprisonment.[4]

Dudley objected to the PSI, arguing, in relevant part, that the record was insufficient for the court to determine that his prior Alabama convictions were for offenses committed on occasions different from one another. Specifically, Dudley contended that the state indictments did not include the dates of the offenses,[5] and

---

[3] Dudley's PSI indicates a "jailed" date of May 13, 2011 for case no. 11-2012, but the explanation included in the PSI indicates that the offense occurred on May 8, 2011.

[4] Without the ACCA enhancement, § 922(g) carries a statutory maximum of ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2).

[5] The Alabama indictments for Dudley's prior offenses were each returned on different dates but did not include the dates of the charged offenses. The lack of dates in the indictments is not surprising because, under Alabama law, unless time is a material element of the offense,

under *Shepard v. United States*, 544 U.S. 13, 26 (2005), the district court could rely only on statements from his Alabama plea colloquy that he had expressly confirmed during the colloquy. Thus, although the dates of the Alabama offenses were discussed during his 2013 plea colloquy as part of the state's factual proffer, because Dudley was never asked whether he agreed with the factual proffer, he maintained that the district court could not rely on this information when conducting the different-occasions inquiry.

In response, the government acknowledged that the state indictments for the Alabama offenses did not reference the dates of the crimes but argued that it could demonstrate the dates via the 2013 Alabama plea colloquy. And the 2013 plea colloquy established that Dudley did not object to the state's factual proffer that the offenses in question occurred on three different dates. The government maintained that Dudley misread *Shepard*, and *Shepard* does not require that a defendant assent

---

the date on which an offense was committed need not be alleged in the indictment and a defendant has no right to notice of this specific information. *See* Ala. Code § 15-8-30 (1975) ("It is not necessary to state the precise time at which an offense was committed in an indictment . . . unless time is a material ingredient of the offense."); *R.A.S. v. State*, 718 So. 2d 117, 120 (Ala. 1998) (explaining that "in Alabama, clearly, the defendant has no right to notice of the specific time or place of the alleged offense" (quotation omitted)). In Dudley's case, the indictment in case no. 11-2012 was returned August 29, 2011, and charged Dudley with, among other charges, two counts of assault—one count accused Dudley of injuring another person with a spoon and one count accused him of injuring another person by punching him in the face. The indictment in case no. 11-2366 was returned September 29, 2011, and charged Dudley with assault by beating a detention officer (among other charges). And the indictment in case no. 11-2610 was returned November 3, 2011, and charged Dudley with three counts of assault—as a result of his beating or hitting three detention officers.

5

to a factual proffer in the plea colloquy before the factual proffer may be used to prove a fact of a prior conviction.[6]

In support of its position, the government attached the transcript of Dudley's 2013 Alabama plea colloquy.  At the plea colloquy, Dudley was represented by counsel and, after explaining to Dudley the rights he would be giving up if he pleaded guilty, the state trial court asked the state prosecutor to explain the factual basis for the pleas.[7]  The prosecutor stated that with regard to case no. 11-2012, on or about May 8, 2011, while in the county jail, Dudley, with the intent to cause physical injury to another person, caused physical injury to another inmate by means of a spoon, and he also punched Detention Officer Hall in the face.  With regard to case no. 11-2366, on or about July 26, 2011, Dudley assaulted Detention

---

[6] The probation office ultimately agreed with the government's position.

[7] The trial court was required under Alabama law to confirm that there was a factual basis before accepting Dudley's guilty pleas.  Specifically, Alabama Rule of Criminal Procedure 14.4, which mirrors Federal Rule of Criminal Procedure 11, requires that a trial court not enter judgment on a plea without confirming that there is a factual basis for the plea.  *See* Ala. R. Crim. P. 14.4(b) ("[T]he court shall not enter a judgment upon such plea without being satisfied that there is a factual basis for the plea").  "The purpose of requiring the trial judge to determine that there is a factual basis for the plea 'is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense.'" *Alderman v. State*, 615 So. 2d 640, 647 (Ala. Crim. App. 1992) (quoting *United States v. Keiswetter*, 860 F.2d 992, 995 (10th Cir. 1988)).  "The only factual basis required for a guilty plea is that which will satisfy the court that the appellant knows what he is pleading guilty to." *Id.* (quoting *Garner v. State*, 455 So. 2d 939, 940 (Ala. Crim. App. 1984)).  The Alabama court may satisfy this factual basis "requirement by eliciting an in-court statement from the defendant, by an in-court statement from the district attorney, or from evidence presented . . . ." *G.E.G. v. State*, 54 So. 3d 949, 955 (Ala. 2010) (quotation omitted).  "The district attorney's assertions of what he expects the evidence to show will suffice." *Id.* at 956 (quotation omitted).

Officer Gandy when Gandy was delivering breakfast to the pod in which Dudley was housed. With regard to case no. 11-2610, on July 13, 2011, Dudley assaulted Detention Officers Gandy, Chanell, and Little, when the officers came to check on an inmate in the pod who was bleeding.

Following the initial factual proffer that included the dates of the offenses, the state prosecutor asked "[d]id I miss anything" and Dudley's counsel stated "That's it. You did cover jail credit?" The state court asked whether "[t]hese were all separate incidents" and the prosecutor confirmed that they were. Dudley did not object to this assertion. The state court then asked Dudley what his plea was as to each respective case, and Dudley responded "guilty" three times, once for each case. He also confirmed that he was pleading guilty because he was in fact guilty. The trial court then found Dudley guilty and asked him whether he had "anything to say before the [c]ourt pronounce[d] sentence," and Dudley responded, "No, sir." Additionally, following pronouncement of sentence, the state court asked if there was anything further, and Dudley's counsel responded "Nothing further. Just for transcript purposes, if you will—we can note on the record that that jail credit applies to each and every case and every count."

In reply to the government's assertion that it could prove that his prior offenses were committed on different occasions based on his 2013 Alabama plea colloquy, Dudley reiterated his position that the record was insufficient to establish

7

that his prior convictions were committed on different occasions because the state trial court never asked him whether he agreed with the factual proffer and never instructed Dudley to say whether he disagreed with anything said during the plea colloquy.

At the federal sentencing hearing, Dudley reaffirmed his objection to the ACCA enhancement. In particular, Dudley argued that his guilty plea to the state offenses was an admission of the elements of the offenses, but not the dates of the offenses, as dates are non-elemental facts about which the defendant has little incentive to object and the district court was not permitted to rely on non-elemental facts. The district court recognized that this case presented "a close call," but it concluded that the record supported the conclusion that the state offenses were "separate occurrences." The district court noted that Dudley had not objected during the 2013 Alabama plea colloquy, and the indictments were separate and "the grand jury took them up and true billed them." Following consideration of additional sentencing-related arguments, the district court imposed a within-guidelines 215-month sentence. This appeal followed.

## II.    Standards of Review

We review *de novo* whether prior offenses meet the ACCA's different-occasions requirement. *United States v. Carter*, 969 F.3d 1239, 1242 (11th Cir.

8

2020). "We may affirm on any ground supported by the record." *Id.* (quoting

*Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016)).

Dudley's *Rehaif*-based challenge to his conviction, however, which he raises

for the first time on appeal, is reviewed only for plain error. *United States v. Reed*,

941 F.3d 1018, 1021 (11th Cir. 2019). To establish plain error, a defendant must

show: (1) an error; (2) that was obvious; (3) that affected the defendant's

substantial rights; and (4) that seriously affected the fairness, integrity, or public

reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734–37

(1993). "[W]e may consult the whole record when considering the effect of any

error on [Dudley's] substantial rights." *Reed*, 941 F.3d at 1021 (quoting *United

States v. Vonn*, 535 U.S. 55, 59 (2002)).

### III.    Discussion

### A.    ACCA Challenge

Under the ACCA, a defendant convicted of possession of a firearm by a

convicted felon, pursuant to 18 U.S.C. § 922(g), is subject to a mandatory-

minimum sentence of 15 years' imprisonment if he "has three previous

convictions . . . for a violent felony or serious drug offense, or both, committed on

occasions different from one another." 18 U.S.C. § 924(e)(1). Thus, determining

whether a defendant qualifies for an ACCA enhancement involves a two-prong

inquiry: (1) whether the defendant has three prior convictions that each meet the

ACCA's definitions of a violent felony or a serious drug offense, and, if so, (2) whether those predicate offenses were committed on different occasions from one another.

Dudley does not contest the district court's finding that his prior convictions for Alabama assault qualify as violent felonies, so the only issue we must decide is whether the district court erred under the second step of the inquiry, in determining that Dudley's prior convictions were committed on occasions different from one another. Nevertheless, because some of Dudley's arguments as to the proper inquiry under the second step are inextricably intertwined with considerations relevant to the initial predicate violent felony determination, we discuss both steps.

## 1. The predicate violent felony determination

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

10

18 U.S.C. § 924(e)(2)(B).  Section 924(e)(2)(B)(i) contains the "elements clause,"
while subsection (ii) contains the "enumerated crimes" and the "residual clause."[8]
*United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

"To determine whether a state conviction qualifies as a violent felony under
the ACCA's elements clause, [courts] employ a 'categorical approach.'" *United
States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020).  The categorical approach
focuses solely on the statutory definition of the offense of conviction (*i.e.*, the
elements of the offense of conviction), not the defendant's underlying conduct (*i.e.*,
the facts).  *See Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis
v. United States*, 136 S. Ct. 2243, 2248–49, 2251 (2016) (discussing the categorical
approach under the ACCA); *Descamps v. United States*, 570 U.S. 254, 267–69
(2013) (same).

"'Elements' are the 'constituent parts' of a crime's legal definition—the
things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at
2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)).  "Facts by contrast,
are mere real-world things—extraneous to the crime's legal requirements." *Id.*  At
least in terms of the predicate felony determination under the ACCA, unlike

_____

[8] In 2015, the Supreme Court struck down the ACCA's residual clause as
unconstitutionally vague.  *See Johnson v. United States*, 576 U.S. 591, 597–602 (2015).  In
holding that the residual clause was void for vagueness, the Court clarified that it did not call into
question the validity of the elements clause or the enumerated crimes clause.  *Id.* at 606.  Thus,
our discussion here focuses on the remaining two clauses—the elements clause and the
enumerated crimes clause.

elements, facts "hav[e] no legal effect or consequence" and need not be proven by a prosecutor, found by a jury, or admitted by a defendant. *Id.* (quotation omitted).

Accordingly, when examining whether a conviction qualifies as a violent felony under the elements clause, the categorical approach requires that courts focus only on the statutory elements and "presume that the conviction rested upon the 'least of the acts criminalized' by the statute." *Oliver*, 962 F.3d at 1316 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). "If the 'least of the acts criminalized' by the statute of conviction has an element requiring 'the use, attempted use, or threatened use of physical force against the person of another,' then the offense categorically qualifies as a violent felony under the ACCA's elements clause." *Id.* (quoting *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017)).

Similarly, under the enumerated crimes clause, which only encompasses prior convictions for "generic" versions of the offenses it lists, courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps*, 570 U.S. at 257. The prior conviction qualifies under the enumerated crimes clause "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.*

Finally, when a statute of conviction is divisible, meaning it sets elements in the alternative and defines multiple crimes, courts may use the modified categorical approach and look beyond the statutory elements of the prior conviction by considering *Shepard*-approved documents for the limited purpose of ascertaining which of the alternative elements formed the basis of the defendant's conviction. *Id.* These *Shepard*-approved documents include the "charging document, the terms of a plea agreement, or transcript of [plea] colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 16, 26.[9] Once the court determines which of the alternative statutory

_____

[9] In *Shepard*, the Supreme Court confirmed that guilty pleas could be the basis for an ACCA predicate offense "and that *Taylor*'s reasoning controls the identification of generic convictions following pleas." 544 U.S. at 19. Thus, *Shepard* held that, where a district court is confronted with a prior conviction from a state that has non-generic offenses, in order to determine whether the defendant's plea necessarily admitted elements of a generic offense, the court is limited to certain judicial record evidence—charging instruments, terms of a plea agreement, or "transcript of a plea colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some other comparable judicial record." *Id.* at 26. Contrary to the dissent's contention, *Shepard* did not limit a sentencing court to "only three sources." Rather, although the *Shepard* court specified certain sources, it left open the consideration of additional sources by specifying "some other comparable judicial record." *Id.*

Dudley argues that a plea colloquy is not a *Shepard*-approved source unless the defendant confirms the factual basis for the plea. We accept for the purposes of this opinion that he is correct, and that the only way the district court could have relied on the prosecutor's factual statements from his Alabama plea colloquy was if there was evidence of his confirmation of those statements. Nevertheless, we note that the Supreme Court used slightly different language in the beginning of the *Shepard* opinion, stating that "a later court determining the character of [a prior conviction] is generally limited to examining the statutory definition, charging document, written plea agreement, *transcript of plea colloquy*, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16 (emphasis added). And post-*Shepard*, in every Supreme Court case that has discussed or mentioned *Shepard*-approved sources, the Supreme

13

elements formed the basis of defendant's conviction, it "can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime" or examine whether the elements of the crime qualify under the elements clause. *Descamps*, 570 U.S. at 257.

A great deal of litigation has ensued over the years regarding when a court may use the modified categorical approach in conducting the predicate violent felony inquiry. For instance, in *Descamps*, the Supreme Court held that district courts could not apply the modified categorical approach when the crime of conviction consists of a single, indivisible set of elements. *Id.* at 265. The Court explained that applying the modified categorical approach to a statute involving a single, indivisible set of elements "authorizes the court to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct,"—which is judicial factfinding that is prohibited by the Sixth Amendment. *Id.* at 269–70 (discussing the interplay between the categorical approach and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held that, under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact

Court has routinely referred generally to "plea colloquies" as *Shepard*-approved sources without further qualification. *See, e.g.*, *Descamps*, 570 U.S. at 262; *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *Johnson v. United States*, 559 U.S. 133, 144 (2010); *Nijhawan v. Holder*, 557 U.S. 29, 36, 41 (2009); *Chambers v. United States*, 555 U.S. 122, 126 (2009), *abrogated in part by Johnson*, 559 U.S. at 133; *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007).

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). The *Descamps* Court emphasized that the categorical approach avoids the Sixth Amendment concerns identified in *Apprendi* by focusing on the elements of the crime of conviction, which are necessarily admitted as part of a guilty plea and does not permit consideration of non-elemental facts—extraneous information that the defendant may have little incentive to contest—to increase a defendant's maximum sentence. *Id.* at 270.

Subsequently, in *Mathis*, the Supreme Court held that the modified categorical approach could not be applied to determine whether a prior conviction qualified as a violent felony predicate where a statute of conviction was indivisible and merely identified multiple "means" of committing a crime, rather than "elements." 136 S. Ct. at 2253. The Court emphasized that applying the modified categorical approach to determine the means by which a defendant committed the prior crime would require consideration of non-elemental facts and result in impermissible judicial fact-finding in violation of the Sixth Amendment. *Id.* at 2252–53.

Thus, at least for purposes of the first step in the ACCA inquiry—whether a prior offense of conviction qualifies as a violent felony—the law is crystal clear that facts simply do not matter, even when the defendant expressly confirmed or

15

assented to those facts. *Id.*; *see also Descamps*, 570 U.S. at 260–65; *Taylor*, 495 U.S. at 600. But notably, *Taylor*, *Shepard*, *Descamps*, and *Mathis*, upon which Dudley and the dissent rely, all focused solely on the predicate felony stage of the ACCA inquiry—in particular whether the prior offense of conviction qualified as a violent felony. None of those cases addressed the second step of the ACCA inquiry—whether the predicate qualifying violent felonies were committed on different occasions from one another—which we confront in this case. Indeed, the Supreme Court has never squarely addressed the different-occasions inquiry.

And it is this latter step that Dudley challenges in the instant appeal. Accordingly, we must examine the different-occasions inquiry and Dudley's argument that the district court erred in determining that his predicate violent felony state convictions were committed on different occasions from one another.

## 2. The Different-Occasions Inquiry

The ACCA's different-occasions language refers expressly to three previous qualifying predicate convictions that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). To qualify as offenses committed on different occasions from one another under the ACCA, the offenses must be "temporally distinct" and arise from "separate and distinct criminal episode[s]." *United States v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (quotation omitted). The government bears the burden of proving by a preponderance of the evidence

16

that the prior convictions "more likely than not arose out of 'separate and distinct criminal episode[s].'" *United States v. McCloud*, 818 F.3d 591, 595–96 (11th Cir. 2016) (alteration in original) (quoting *Sneed*, 600 F.3d at 1329).

Unlike the predicate felony determination, which focuses solely on the statutory legal elements, the different-occasions inquiry necessarily "requires looking at the facts underlying the prior convictions." *United States v. Richardson*, 230 F.3d 1297, 1299 (11th Cir. 2000), *abrogated in part by Sneed*, 600 F.3d at 1332 (recognizing that while *Shepard* abrogated *Richardson*'s approval of the use of police reports to determine whether prior convictions were committed on different occasions, "*Richardson* remains correct" that the different occasions inquiry requires looking at the facts underlying the conviction); *see also United States v. King*, 853 F.3d 267, 273 (6th Cir. 2017) ("As opposed to the ACCA's language pertaining to the predicate [violent felony] question, its different-occasions language does focus on the defendant's conduct: it asks courts to determine whether prior offenses were 'committed' on different occasions.").

Nevertheless, although the different-occasions inquiry requires a court to look at the facts underlying the prior conviction, in order to avoid constitutional concerns, we have held that the court is limited to *Shepard*-approved sources, as only information found in such conclusive judicial records has gone through a validation process that comports with the Sixth Amendment. *Sneed*, 600 F.3d at

17

1332–33. As long as a court limits itself to *Shepard*-approved sources, the court "may determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions," "based on its own factual findings." *United States v. Weeks*, 711 F.3d 1255, 1259–60 (11th Cir. 2013), *abrogated on other grounds by Descamps*, 570 U.S. 254; *see also United States v. Overstreet*, 713 F.3d 627, 635–36 (11th Cir. 2013) (reiterating that "a district court 'ha[s] the authority to apply the ACCA enhancement based on its own factual findings' that the defendant's offenses were committed on occasions different from one another" (quotations omitted)). Furthermore, in determining whether a defendant's prior convictions were committed on different occasions from one another, a district court may rely on "non-elemental facts" contained in the *Shepard*-approved sources. *See United States v. Longoria*, 874 F.3d 1278, 1282–83 (11th Cir. 2017).

Finally, like many of our sister circuits, we have repeatedly rejected the argument that judicially determining whether prior convictions were committed on different occasions from one another for purposes of the ACCA violates a defendant's Fifth and Sixth Amendment rights. *See id.* at 1283 (explaining that under *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998),[10] which

---

[10] Specifically, in *Almendarez–Torres*, the Supreme Court held that, for sentencing enhancement purposes, a judge, rather than a jury, may determine "the fact of a prior

18

remains good law, district courts may determine the factual nature of a prior conviction, including whether offenses of conviction were committed on different occasions from one another, without violating the Fifth and Sixth Amendments); *Weeks*, 711 F.3d at 1259 (same); *see also United States v. Morris*, 293 F.3d 1010, 1012–13 (6th Cir. 2002) (holding that the ACCA's different-occasions determination falls within the *Almendarez-Torres* and *Apprendi* exceptions); *United States v. Harris*, 447 F.3d 1300, 1303–04 (10th Cir. 2006) (holding that "all three elements of the ACCA"—(1) the number of prior convictions, (2) whether a prior conviction qualifies as a violent felony, and (3) whether prior convictions occurred on different occasions from one another—are properly determined by a sentencing court and such determinations do not violate *Apprendi*); *United States v. Thompson*, 421 F.3d 278, 285–86 (4th Cir. 2005) (holding that judicial

---

conviction." 523 U.S. at 226–27. Thereafter, in *Apprendi*, the Supreme Court held that, under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Nevertheless, as is evident from the language of *Apprendi*'s holding, *Apprendi* did not alter the pre-existing rule from *Almendarez–Torres*. Subsequently, in *Alleyne v. United States*, the Supreme Court extended *Apprendi* and held that any facts that increase a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt. 570 U.S. 99, 116 (2013). But in so holding, the Supreme Court expressly declined to alter the *Almendarez–Torres* rule. *Id.* at 111 n. 1 ("Because the parties do not contest [the] vitality [of *Almendarez-Torres*], we do not revisit it for purposes of our decision today."). Thus, *Almendarez–Torres* remains a narrow exception to *Apprendi*'s general rule for the fact of a prior conviction. And although there may be some tension between *Almendarez-Torres* and *Apprendi* and *Alleyne*, "we are bound to follow *Almendarez-Torres* unless and until the Supreme Court itself overrules that decision." *United States v. Smith*, 775 F.3d 1262, 1266 (11th Cir. 2014) (quotation omitted).

determination of the different occasions requirement does not violate the Sixth Amendment); *United States v. Santiago*, 268 F.3d 151, 156–57 (2d Cir. 2001) ("[W]e are satisfied . . . that § 924(e)'s 'different occasions' requirement falls safely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that *Apprendi* does not require different factfinders and different burdens of proof for Section 924(e)'s various requirements.").  With these principles in mind, we turn now to Dudley's arguments.

Dudley argues that the main issue in this case "is whether the *Shepard-* approved documents[11] the government submitted to the district court proved that [his] prior convictions for second-degree assault . . . in Alabama[] were committed on occasions different from one another."  In particular, Dudley asserts that the Alabama indictments did not contain the dates or times of the offenses and, under *Shepard*, the district court could not rely on the dates proffered by the prosecutor during the plea colloquy because Dudley did not expressly confirm that he agreed with the factual proffer.

---

[11] Dudley makes two primary arguments related to the different-occasions inquiry: (1) under *Shepard*, the district court could not rely on the factual proffer contained in Dudley's 2013 Alabama plea colloquy because Dudley never confirmed those facts; and (2) at most, his guilty plea established only the facts inherent to the elements of the offenses, and the district court could not rely on non-elemental facts for the different-occasions inquiry because such facts are unnecessary for conviction.  We address both of these arguments in turn.

20

Although Dudley did not state expressly during the Alabama plea colloquy that he agreed with the prosecutor's factual proffer that the assaults in question occurred on May 8, 2011, July 26, 2011, and July 13, 2011, respectively, he notably did not object. Indeed, the dates of the offenses were mentioned multiple times during the plea hearing and not once did Dudley's counsel or Dudley raise any objection, or express any confusion or hesitation. Similarly, no objection was raised when the state court asked the state prosecutor whether "[t]hese were all separate incidents" and the state prosecutor confirmed that they were separate incidents.

Additionally, after the prosecutor completed the factual proffer at the 2013 plea hearing, he asked "[d]id I miss anything," and Dudley's counsel responded "[t]hat's it," but then went on to raise a separate issue concerning whether jail credit had been addressed. The fact that counsel did not object to the factual proffer but raised a separate issue is an indicator of implicit agreement with the factual proffer.

Furthermore, after the factual proffer by the prosecutor in support of all three indictments, the state court asked Dudley for his plea as to case no. 11-2610, and Dudley responded "[g]uilty." The state court asked Dudley "how do you plead" in case no. 11-2366, and Dudley stated "[g]uilty." The state court then asked Dudley what his plea was to case no. 11-2012, and Dudley responded "[g]uilty, Your

21

Honor." Dudley confirmed that he was pleading guilty because he was in fact guilty.[12] He was also asked whether he had "anything to say before the [c]ourt pronounce[d] sentence," and Dudley responded, "No, sir." Again, no objection or corrections were made to the factual basis.[13]

We conclude that, consistent with *Shepard*, where there is evidence of confirmation of the factual basis for the plea by the defendant—be it express or implicit confirmation—a federal sentencing court is permitted to rely on those facts

---

[12] The fact that Dudley pleaded guilty in each case following the prosecutor's factual proffer distinguishes his case from this Court's recent different-occasions decision in *Carter*, 969 F.3d at 1242, in which the defendant entered his guilty plea prior to the State's factual proffer.

[13] Although Dudley and the dissent argue that a defendant may not have an incentive to object to extraneous facts and superfluous allegations, such a concern is not present here. Dudley had two very good reasons to object if the charged assaults were not separate incidents. First, the indictments in case no. 11-2366 and case no. 11-2610 both charged Dudley with the same crime—second degree assault—against the same victim—Officer Gandy. Thus, the allegation that these were separate incidents was not superfluous or extraneous, and Dudley had every incentive to object if those two assaults did not arise from separate incidents because otherwise his conviction on those two counts would have violated his constitutional right to be protected from double jeopardy. *See Ex Parte Wright*, 477 So. 2d 492, 493 (Ala. 1985). Second, on top of the double jeopardy concern, Alabama has a habitual felony offender statute, which significantly increases the penalties for felony offenders who subsequently commit another Alabama felony offense. Ala. Code § 13A-5-9 (1975). At the time of his 2013 Alabama plea, Dudley was 21 years old and he did not have any adult criminal convictions. Therefore, he was not subject to the habitual felony offender statute. At the 2013 Alabama plea hearing, Dudley pleaded guilty to a total of seven felony convictions, which will increase his sentence if he subsequently commits another Alabama felony. *Id.* § 13A-5-9(c). Accordingly, if there was a way to eliminate one or more of these felony convictions because they did not arise from separate incidents, Dudley and his counsel certainly had an incentive to object. Yet, no objection was raised.

to conduct the different-occasions inquiry.[14]  And in this case, under the totality of

the circumstances, Dudley implicitly agreed with the factual proffer such that the

[14] We do not hold that every time a defendant fails to object to the factual proffer, it constitutes an implicit confirmation of the factual basis.  Rather, the determination that a defendant has implicitly confirmed the factual basis of the plea must be determined on a case-by-case basis considering the totality of the circumstances.  The dissent argues that *implicit* confirmation or assent to a factual basis during a plea colloquy is not sufficient and that *Shepard* requires more—namely, *express* confirmation of the factual proffer by the defendant—which the dissent oddly maintains is *implicit* in *Shepard*'s holding.  The dissent asserts that "an express-confirmation requirement . . . makes good sense" because it sets a bright-line rule that's easily administrable by federal courts reviewing often old, messy state-court records."

But the dissent's proposal injects arbitrariness into the ACCA predicate inquiry.  More often than not ACCA qualifying predicate offenses are state convictions and the colloquy that is required for plea hearings varies from state to state.  For instance, as is clear in this case, under the dissent's approach, the government would rarely be able to rely on Alabama plea colloquies as part of the ACCA predicate inquiry—for either the violent felony or the different-occasions determination—because Alabama does not require the trial court to inquire as to whether a defendant agrees with the factual basis for the plea.  Such arbitrariness is exactly what the Supreme Court sought to avoid in *Shepard* and *Taylor* when it created the categorical approach for the violent felony inquiry and limited a later court determining the nature of a prior conviction to conclusive judicial records—records that had been subject to the judicial adversarial process and were made or used in adjudicating guilt.  *Shepard* explained that, in pleaded cases, such judicial "certainty" lies in "the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(b)(3), shown by a transcript of a plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea."  544 U.S. at 20.  A plea colloquy is a conclusive judicial record, and although *Shepard* referenced—without qualification—"the factual basis for the plea [as] confirmed by the defendant," *id.* at 26, the Supreme Court never stated that the defendant had to *expressly confirm* the factual basis.  Thus, nothing in *Shepard* precludes implicit confirmation of the factual basis by the defendant based on the totality of the circumstances in a given case.  *See also United States v. McCloud*, 818 F.3d 591, 596–98, 600 (11th Cir. 2016) (noting that, although the charging documents for the prior offenses did not specify the time or location of the prior robberies, the prosecutor's factual proffer which identified the location of one of the robberies from McCloud's prior plea colloquy established at least two separate offenses, but vacating the ACCA enhancement and remanding for resentencing because the information in the *Shepard*-approved sources was insufficient to establish that there were three separate offenses).

Indeed, an express confirmation requirement imposes a requirement that does not even exist under the Federal Rules of Criminal Procedure.  Rule 11(b)(3) requires that a district court "determine that there is a factual basis for the plea," but it does not require the district court to ask whether a defendant agrees with the factual basis.  *See* Fed. R. Crim. P. 11(b)(3).  Permitting both express and implicit confirmation protects against arbitrary results based on variances in state requirements for plea colloquies from being the determinative factor as to whether the

district court could rely on the proffered dates of Dudley's prior Alabama assaults to confirm that the predicate offenses were committed on different occasions from one another.

We are not the first circuit to conclude that implicit confirmation can satisfy *Shepard*'s requirements.  Under similar circumstances, the Fourth Circuit in *United States v. Taylor*, 659 F.3d 339 (4th Cir. 2011), found that a defendant's plea constituted an admission of the conduct reflected in the prosecutor's factual proffer even though the defendant never expressly admitted the facts.  In *Taylor*, one of the defendants argued that his prior Maryland conviction for assault did not qualify as an ACCA predicate violent felony and that the federal sentencing court erred in relying on the prosecutor's factual proffer from his state plea colloquy because "he never actually admitted [those] facts during his plea colloquy."  *Id.* at 341, 345.  The Fourth Circuit squarely rejected this contention.  The court emphasized that the transcript of the state plea proceedings revealed that, after being informed of his rights, the defendant's attorney asked whether it was still the defendant's intention to plead guilty, and the defendant responded affirmatively.  *Id.* at 341–42.  The prosecutor then made a factual proffer in support of the plea.  When the

government can later rely on a plea colloquy as part of the ACCA inquiry.  Given these concerns and the Supreme Court's silence in *Shepard* as to whether confirmation of the factual basis needed to be express, it is much more likely that the Supreme Court intended to encompass both express and implicit confirmation of the factual basis for the plea within its holding as opposed to the express confirmation requirement advocated for by the dissent.

prosecutor completed the factual proffer, the court asked the defendant's attorney whether she had any additions or corrections, to which she responded "no." *Id.* at 342. The district court then found the defendant guilty and asked if there was "anything else [the defendant] would like to say," and the defendant responded "No, ma'am." *Id.* The Fourth Circuit emphasized that "[d]uring the entire plea colloquy, neither [the defendant] nor his counsel protested his innocence, disputed his guilt, or disagreed with the prosecutor's statement of the facts. . . . [despite] [t]he colloquy [being] replete with opportunities for [the defendant] to challenge his factual guilt." *Id.* at 342, 347. Thus, the Fourth Circuit concluded that the defendant's attorney's statement that she had no additions or corrections to the statement of the facts and the defendant's confirmation of his intention to plead guilty and failure "to make any correction when given another chance to speak," "constituted an admission of the . . . conduct reflected in the sole proffered factual basis for the plea." *Id.* at 348.

We find Dudley's circumstances even more persuasive than those in *Taylor*.[15] First, unlike the defendant in *Taylor* who confirmed his intention to

---

[15] The dissent contends that *Taylor* "isn't quite on point" because it pre-dated *Descamps* and *Mathis*, involved the violent felony inquiry as opposed to the different-occasions inquiry, and Taylor argued that his plea was an *Alford* plea. The dissent's arguments are unpersuasive. The fact that *Taylor* pre-dated *Descamps* and *Mathis* is irrelevant because, as discussed further in this opinion, neither *Descamps* nor *Mathis* affected the different-occasions inquiry. Similarly, the fact that *Taylor* involved the violent felony inquiry does not change the fact that the Fourth Circuit determined that Taylor implicitly admitted to the conduct contained in the factual proffer

plead guilty prior to the state's factual proffer, Dudley expressed his intention to plead guilty following the state's factual proffer three times—once for each case. He did so without hesitation and without any hint of an objection to the facts as set forth by the state prosecutor.  Second, like the defendant in *Taylor*, when asked whether he had anything else to say, Dudley responded, "No sir."  Third, when the state court judge asked whether the assaults in question were separate incidents, the state prosecutor confirmed that they were, and Dudley's counsel made no objection.  Fourth, following the factual proffer, the prosecutor asked whether he "miss[ed] anything" and Dudley's attorney responded "that's it" but inquired as to whether jail credit had been addressed.[16]  The fact that Dudley's counsel confirmed

---

as part of its violent felony inquiry.  *Shepard* existed when the Fourth Circuit decided *Taylor*, and if implicit assent or confirmation is sufficient for the violent felony inquiry, it should also be sufficient for the different-occasions inquiry.  Furthermore, the fact that Taylor argued that his plea was an *Alford* plea is a distinction without a difference.  Taylor's point—just like Dudley's—was that the factual proffer from his state plea colloquy could not be relied upon because "he never actually admitted [to those facts] during his plea colloquy."  *Taylor*, 659 F.3d 347.  In rejecting this argument, the Fourth Circuit first noted that, contrary to the defendant's argument, his "plea [was] not an *Alford* plea."  *Id.*  Rather, the defendant's plea was "a perfectly ordinary guilty plea."  *Id.*  Moreover, in rejecting Taylor's argument, the Fourth Circuit acknowledged *Shepard*'s reference to "a plea colloquy 'in which the factual basis for the plea was confirmed by *the defendant*,'" but it nevertheless concluded that because neither Taylor nor his counsel made any "additions or corrections to the prosecution's statement of facts" and Taylor "confirmed his intention to plead guilty," his "plea of guilty constituted an admission of the violent conduct reflected in the sole proffered factual basis for the plea."  *Id.*  Accordingly, *Taylor* is clearly on point.  It involved a garden-variety guilty plea, just like Dudley's plea, and it supports our conclusion that a subsequent sentencing court may rely on a factual proffer if there is evidence of confirmation or assent by the defendant, be it implicit or express assent.

[16] Following pronouncement of sentence, Dudley's counsel again raised a matter of jail credit for record purposes.

26

"that's it" following the factual proffer yet raised another issue concerning jail credit further lends support to the conclusion that Dudley assented to the factual proffer. Thus, just like in *Taylor*, during Dudley's "entire plea colloquy, neither [the defendant] nor his counsel protested his innocence, disputed his guilt, or disagreed with the prosecutor's statement of the facts. . . . [despite] [t]he colloquy [being] replete with opportunities for [the defendant] to challenge his factual guilt." 659 F.3d at 342, 347. Accordingly, we agree that, when considered as a whole, the plea proceeding confirms that Dudley assented to the factual proffer.

Dudley disagrees that he implicitly assented to the dates of the Alabama assaults contained in the state prosecutor's factual proffer. He maintains that his guilty plea established only the essential elements of the assaults, and that dates are "non-elemental facts" which courts cannot consider, citing the Supreme Court's decisions in *Descamps* and *Mathis*.

Dudley's reliance on *Descamps* and *Mathis* is misplaced. As discussed previously, both *Descamps* and *Mathis* concerned when a district court may apply the modified categorical approach to ascertain whether a conviction qualifies as an ACCA violent felony predicate—an inquiry not at issue here. *Mathis*, 136 S. Ct. 2253; *Descamps*, 570 U.S. at 257–58. Neither case addressed the second inquiry required by the ACCA—whether the qualifying violent offenses were committed on different occasions from one another. *See generally Mathis*, 136 S. Ct. 2253;

27

*Descamps*, 570 U.S. at 257–58.  Therefore, *Descamps* and *Mathis* have no bearing on this case.

To the extent Dudley argues that *Descamps* and *Mathis* abrogated our precedent regarding the different-occasions inquiry, his argument is unavailing. Under our prior precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this court sitting *en banc*."  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  To conclude that we are not bound by a prior holding in light of a Supreme Court case, we must find that the case is "clearly on point" and that it "actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s], the holding of the prior panel."  *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).  Neither *Descamps* nor *Mathis* is clearly on point as neither case deals with the different-occasions inquiry.  *See generally Mathis*, 136 S. Ct. 2253; *Descamps*, 570 U.S. at 257–58.  Accordingly, neither case abrogated our prior precedent on the different-occasions inquiry for purposes of the ACCA.  *Kaley*, 579 F.3d at 1255.

Moreover, since *Descamps* and *Mathis*, we have reaffirmed our holding that district courts may rely on non-elemental facts contained in *Shepard*-approved documents when deciding whether a defendant's predicate offenses were committed on occasions different from one another.  *Longoria*, 874 F.3d at 1283.

28

And we are not alone in this view. Other circuits addressing this issue have also concluded that, while sentencing courts are restricted to *Shepherd*-approved sources when conducting the different-occasions inquiry, there is no limitation on a sentencing court's consideration of non-elemental facts contained in those documents. *See, e.g.*, *United States v. Walker*, 953 F.3d 577, 581 (9th Cir. 2020) (rejecting the argument that *Mathis* precludes a sentencing court from considering non-elemental facts in *Shepard*-approved sources when determining whether the offenses in question occurred on different occasions); *United States v. Hennessee*, 932 F.3d 437, 443 (6th Cir. 2019) (rejecting the argument that, under *Descamps* and *Mathis*, a sentencing court is limited to elemental facts contained in *Shepard*-approved sources in conducting the different-occasions inquiry); *United States v. Blair*, 734 F.3d 28, 227–28 (3d Cir. 2013) (rejecting the argument that *Descamps* forbids courts from considering non-elemental facts to determine whether prior offenses of conviction were committed on different occasions). Any holding to the contrary would effectively render a sentencing judge incapable of making the ACCA different-occasions determination as the elemental facts rarely ever involve the date, time, or location of crimes.[17]

---

[17] Dudley makes much of the fact that he did not expressly "admit" or "confirm" the non-elemental dates of the assaults during the Alabama plea colloquy. But even if he had, under the reasoning of *Descamps* and *Mathis* (which Dudley would have us apply to the different-occasions inquiry), such an admission would not have mattered and could not have been relied on by the district court as a basis for finding the ACCA enhancement. *See Descamps*, 570 U.S.

In Dudley's case, in determining whether the second ACCA requirement was met—that the Alabama assaults were committed on different occasions—the district court limited itself to the charging documents and the plea colloquy from Dudley's Alabama proceedings. Those are *Shepard*-approved documents. *Shepard*, 544 U.S. 16, 26. Under our precedent, the district court was authorized to use information from those documents, including non-elemental facts, such as the dates of the offenses proffered by the prosecutor as the factual basis for the plea, to determine whether the different occasions requirement was met. *See, e.g.*, *Longoria*, 874 F.3d at 1283; *Weeks*, 711 F.3d at 1260–62 ("the district court ha[s] the authority to apply the ACCA enhancement based on its own factual findings" as long as those findings are drawn from *Shepard*-approved documents); *Sneed*, 600 F.3d at 1333 (holding that district courts may still "look to certain facts underlying the prior conviction" to determine if the prior offenses were committed on different occasions for purposes of the ACCA, provided they rely "only [on] *Shepard*-approved sources"); *United States v. Greer*, 440 F.3d 1267, 1275 (11th

_____

at 270 (explaining that "whatever [a defendant] says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment"); *see also Mathis*, 136 S. Ct. at 2248 (explaining that facts are "extraneous to the crime's legal requirements" and "need neither be found by a jury nor admitted by a defendant"). This point illustrates why the reasoning of *Descamps* and *Mathis* cannot extend to the different-occasions inquiry. Without relying on extraneous facts—which *Descamps* and *Mathis*, if they applied in this context, would have us ignore—there would simply be no way for a district court to ever determine whether a defendant's qualifying violent felony convictions were committed on different occasions from one another, which is an undisputed requirement of the ACCA. *See* 18 U.S.C. § 924(e)(1).

Cir. 2006) ("There is implicit in the *Shepard* rule, however, a recognition that if the nature of the prior conviction can be determined from those types of records, under existing law the trial judge may make the determination. There would be no point in restricting the sources that a judge may consider in reaching a finding if judges were barred from making it.").

Accordingly, the district court did not err in relying on the prosecutor's factual proffer in Dudley's plea colloquy to find by a preponderance of the evidence that the three qualifying prior convictions for Alabama assault occurred on three separate, distinct occasions.

## B.    *Rehaif* Challenge to Dudley's Guilty Plea

In *Rehaif*, the Supreme Court concluded that the word "knowingly" in 18 U.S.C. § 924(a) "applies both to the defendant's conduct and to the defendant's status." 139 S. Ct. at 2194, 2195–96. Thus, the Supreme Court held that to convict a defendant of violating 18 U.S.C. § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.

For the first time on appeal, Dudley argues that, in light of *Rehaif*, his guilty plea must be vacated because the district court lacked subject-matter jurisdiction given that the indictment failed to allege a crime as it did not "cite or track"

31

§ 924(a).[18]  This argument is foreclosed by our binding precedent.  We recently

held that the same *Rehaif*-based defect of which Dudley complains is non-

jurisdictional.  *See United States v. Bates*, 960 F.3d 1278, 1295 (11th Cir. 2020);

*United States v. Moore*, 954 F.3d 1322, 1333–37 (11th Cir. 2020).

Dudley also argues for the first time on appeal that, pursuant to *Rehaif*, his

plea was not knowing and voluntary because both the indictment and the plea

colloquy omitted a critical element of the crime—his knowledge that, at the time

he possessed the firearm, he previously was convicted of a crime punishable by a

year or more in prison.  We review this claim for only plain error.  *Greer v. United

States*, 593 U.S. ___, 141 S. Ct. 2090, 2096–97 (2021).  To prevail, Dudley "must

show 'a reasonable probability that, but for the error, he would not have entered

the plea.'"  *Bates*, 960 F.3d at 1296 (quoting *United States v. Davila*, 569 U.S. 597,

607 (2013)); *see also United States v. McLellan*, 958 F.3d 1110, 1120 (11th Cir.

2020) (same).  Dudley cannot make this showing.  Indeed, Dudley does not assert

that he would have changed his decision to plead guilty had he known that the

government had to prove his knowledge of his felon status.  Moreover, as in *Bates*,

"[h]ad the government been required to prove that [Dudley] knew he was a felon at

the time he possessed a firearm, there is overwhelming evidence to show that it

would have easily done so."  960 F.3d at 1296.  And "[h]ad [Dudley] known that

---

[18] Dudley's 2018 guilty plea predated *Rehaif*, which was decided in 2019.

32

the government needed to prove that he knew he was a felon, the probability is virtually zero that it would have changed his decision to plead guilty." *Id.* Accordingly, he cannot establish that the error affected his substantial rights for purposes of plain error review, and he is not entitled to relief on this claim. *Id.*; *see also McLellan*, 958 F.3d at 1120 (holding that a *Rehaif*-based error did not affect the defendant's substantial rights when (1) "[t]here was no contemporaneous evidence to suggest that, had the indictment included the knowledge-of-status element, [the defendant] would have changed his plea and proceeded to trial" and (2) "the record reveal[ed] no basis for concluding that the government would have been unable to prove that [the defendant] knew he was a felon when he possessed the gun" had the case gone to trial).

## IV.    Conclusion

For the above reasons, we affirm Dudley's conviction and sentence.

**AFFIRMED.**

33

NEWSOM, J., concurring in part and dissenting in part:

If a felon is convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g), he is ordinarily subject to a term of imprisonment ranging from zero to 10 years. But under the Armed Career Criminal Act, if the same felon (1) has "three previous convictions . . . for a violent felony" that (2) were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), he faces a mandatory minimum sentence of 15 years, extending upward to life. This case is about ACCA's different-occasions requirement—and, in particular, the evidence on which the district court here relied to find that Joshua Dudley's prior felony offenses were committed on "occasions different from one another."

Dudley pleaded guilty in federal court to possessing a firearm as a convicted felon in violation of § 922(g). Five years earlier, in a single state-court proceeding, he had pleaded to at least one count of second-degree assault in three separate cases. But neither the indictments nor the plea agreements underlying those assault convictions referenced the dates or times of the offenses. To find that the previous assault offenses occurred on "occasions different from one another"—and thus apply ACCA's sentencing enhancement—the district court here relied on the prosecutor's factual proffer from Dudley's state-court plea hearing.

But under *Shepard v. United States*, 544 U.S. 13, 26 (2005), and *United States v. Sneed*, 600 F.3d 1326, 1331 (11th Cir. 2010), a federal court may consider

34

a plea-colloquy transcript in determining whether a defendant's prior offenses were committed on different occasions *only* when "the factual basis for the plea was confirmed by the defendant." Here, Dudley never confirmed the prosecutor's factual recitation. Because the district court erred in relying on unconfirmed statements in the plea-colloquy transcript, I respectfully dissent from Part III.A of the Court's opinion, which rejects Dudley's challenge to the ACCA enhancement.

**I**

I start with common ground. The majority and I agree on the facts. We agree that Dudley's claim under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), fails. And, as relevant here, we agree that in determining whether a defendant's previous offenses were committed on different occasions for ACCA purposes, a court may consult only "*Shepard*-approved sources." *See* Maj. Op. 13 n.9, 17, 18, 29, 30; *see also United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010).

The majority and I part ways over whether the plea-colloquy transcript from Dudley's state-court plea hearing was a "*Shepard*-approved source[]." By dint of binding precedent—both from the Supreme Court and our own—a plea-colloquy transcript is a *Shepard*-approved source only if "the factual basis for the plea was confirmed by the defendant." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see also, e.g.*, *United States v. Carter*, 969 F.3d 1239, 1243 (11th Cir. 2020); *Sneed*, 600 F.3d at 1331. Here, Dudley was never asked to—and didn't—confirm

35

the factual basis for his plea. So, the way I see it, the district court erred by using the plea-colloquy transcript to find that Dudley's prior offenses were committed on different occasions. Let me unpack that conclusion.

## A

### 1

Because all here agree that in conducting the different-occasions inquiry a court may consider only "*Shepard*-approved sources," I begin with *Shepard* itself—in particular, to explain the genesis and underpinnings of its rule that a plea-colloquy transcript is a *Shepard*-approved source only if the "factual basis for the plea was confirmed by the defendant." 544 U.S. at 26.

*Shepard* didn't involve (as this case does) ACCA's different-occasions requirement; rather, it concerned ACCA's separate requirement that a defendant have three previous convictions "for a violent felony." ACCA enumerates several crimes that qualify by definition as violent felonies—among them burglary, arson, and extortion. 18 U.S.C. § 924(e)(2)(B)(ii). Each offense enumerated there refers to the crime in its "generic" sense—*i.e.*, the sense "in which the term is now used in the criminal codes of most States." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Burglary, for instance, is a crime whose generic definition is the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* In *Shepard*, the defendant had pleaded guilty to a charge

36

under a Massachusetts burglary statute. 544 U.S. at 16. The Massachusetts law, however, criminalized not only entry into buildings ("generic" burglary) but also entry into boats and cars (non-"generic" burglary). *Id.* at 17. The question the *Shepard* Court confronted was how to determine which crime the defendant there had admitted—the one with the element of entry into a building or the one with the element of entry into boats and cars. *Id.*

In answering that question, the Supreme Court looked back to its earlier decision in *Taylor*. There, the Court had held that, ordinarily, when determining whether a defendant's prior offense was for a violent felony, courts should apply a "categorical approach": They may look only to "the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." 495 U.S. at 600.

But the *Taylor* Court had also recognized that circumstances might arise, as they did in *Shepard*, where a state criminal statute would cover more than just the generic offense—where, for instance, burglary is defined to include both entering a building and entering an automobile. *Taylor* had thus explained that in a "narrow range of cases" a sentencing court can look beyond the statutory elements to "the indictment or information and jury instructions" to determine exactly what crime was charged and whether that crime matched the generic offense. *Id.* at 602. This narrow corollary has since been dubbed the "modified categorical approach."

37

The *Shepard* Court's task was to adapt the modified categorical approach—which *Taylor* had theorized in the context of a conviction arising from a jury trial—to guilty pleas. As the *Shepard* Court explained, *Taylor* stood for the proposition that "respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court approaching the *certainty* of the record of conviction in a generic crime State." 544 U.S. at 24 (emphasis added). Thus, the *Shepard* Court said, the analogues of indictments and jury instructions in the guilty-plea context had to satisfy "*Taylor*'s demand for certainty." *Id.* at 21. That, in turn, led the Court to hold that in determining whether an underlying guilty plea was for an ACCA-qualifying violent felony, a sentencing court is limited to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26.

All here agree that *Shepard* repeatedly emphasizes that in order for a plea-colloquy transcript to "count," so to speak—at least in answering ACCA's violent-felony inquiry—it must reflect that the defendant either "confirmed" the factual basis for the plea or otherwise "assented" to specific facts. *Id.* at 16 ("any explicit factual finding by the trial judge to which the defendant assented"); *id.* at 26 ("transcript of colloquy between judge and defendant in which the factual basis for

38

the plea was confirmed by the defendant"); *see also* Maj. Op. 13 (recognizing confirmation-or-assent requirement).[1]

The *Shepard* Court sensibly imposed the confirmation requirement for two reasons.  First, as the Court explained, only confirmation or assent can produce the "certainty" that *Taylor* demands:  Where "[t]he state statute requires no finding of generic burglary, and without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies . . . (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Shepard*, 544 U.S. at 25 (plurality opinion).  Tellingly, while it acknowledged that plenty of sources beyond those that it had delineated might contain evidence that is "uncontradicted" and "internally consistent," the *Shepard* Court emphasized that allowing reliance on them would stray from *Taylor*'s demand not just for reliability, but for "certainty."  *Id.* at 23 & 23–24 n.4.

Second, the *Shepard* Court grounded its limitation on permissible sources, in part, on the constitutional concerns posed by judicial factfinding that increases a

---

[1] At times, the majority hints that a plea-colloquy transcript qualifies as a *Shepard*-approved source, even absent a defendant's confirmation of its factual basis, either because *Shepard* alludes to "some comparable judicial record" or because *Shepard* once refers to the "transcript of a plea colloquy" simpliciter, without mentioning confirmation.  Maj. Op. at 13–14 n.9; *id.* at 22–23  n.14.  In the end, though, I don't take the majority opinion to seriously suggest that Dudley's plea colloquy, standing alone, is *Shepard*-approved, considering that it devotes much of its analysis to explaining why Dudley can be understood to have "confirmed" the plea's factual basis, as a proper reading of *Shepard* requires.  *Id.* at 20–31.  To the extent the majority makes the stronger claim, I respond below in text.  *See infra* at 43–44.

defendant's statutory maximum sentence. *Id.* at 24–25 (plurality op.).  In the years immediately preceding *Shepard*, the Supreme Court had held that the Sixth Amendment prohibits judges from relying on facts that were neither "reflected in the jury verdict [n]or *admitted by the defendant*" to increase a defendant's maximum sentence.  *See Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis modified) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).  Because a defendant's admissions don't present the same constitutional difficulties, a court is free to consider them.  *See Apprendi*, 530 U.S. at 488 (explaining that where a defendant had "admitted the three earlier convictions . . . no question concerning the right to a jury trial . . . was before the Court").  The same constitutional impulse that "counsel[ed the Court] to limit the scope of judicial factfinding" to a handful of uniquely reliable sources likewise counsels a starchy confirmation requirement for plea colloquies.

## 2

Although *Shepard* dealt specifically with ACCA's violent-felony requirement, it applies equally to ACCA's different-occasions inquiry.  In *United States v. Sneed*, we rejected the contention that a district court could rely on police reports to find that a defendant's previous offenses occurred on different occasions.  *See* 600 F.3d 1326, 1333 (11th Cir. 2010).  In doing so, we held that courts conducting the different-occasions inquiry are limited to *Shepard*-approved

sources. *Id.* at 1332.  In particular, we explained that "there is simply no distinction left between the scope of permissible evidence that can be used to determine if the prior convictions are violent felonies . . . or if they were committed on different occasions." *Id.*  And we have since reiterated that "[a]lthough it is certainly appropriate to rely on the transcript of the plea colloquy" in making the different-occasions determination, "*Shepard* allows a court to consider the 'factual basis for the plea' *only* when it 'was confirmed by the defendant.'"  *Carter*, 969 F.3d at 1243 (different-occasions case) (emphasis added) (quoting *Shepard*, 544 U.S. at 26).

**B**

Here, it is undisputed that Dudley never expressly confirmed the factual basis for his plea or admitted to the dates contained in the prosecutor's proffer.  As the majority recounts, at Dudley's state-court plea hearing on his assault charges, the judge asked the prosecutor—not Dudley or his lawyer—to provide a factual basis for each offense.  After the prosecutor did so, the judge then proceeded to verify that Dudley understood the charges to which he was pleading and the state's recommended punishment.  But the judge never asked Dudley to confirm the prosecutor's factual account.  Because, as already explained, under Supreme Court (and our own) precedent an unconfirmed plea colloquy is not a *Shepard*-approved source, the district court here committed reversible error in considering the plea-

41

colloquy transcript to conclude that Dudley's prior offenses were committed on "occasions different from one another."

In holding otherwise, the majority concludes that Dudley *implicitly* confirmed the factual basis for his plea. With little analysis of *Shepard* or its progeny, the majority asserts that a rule of "implicit confirmation" is "consistent with *Shepard*." Maj. Op. at 22.

For better or worse, I'm doubtful that *Shepard* countenances such a lenient approach. As already explained, *Shepard* authorizes courts to consider only three sources, which "approach[] the certainty of the record of conviction." 544 U.S. at 23. *Shepard* expressly rejected the notion that courts could consider sources beyond those that it delineated—even when the information contained in them is "uncontradicted" and "internally consistent." *Id*. at 23–24 n.4. It would be particularly odd, then, to hold that an "uncontradicted" and "internally consistent" non-*Shepard*-approved source—a plea-colloquy transcript, simpliciter—is *equivalent* to a plea-colloquy transcript in which the factual basis is "confirmed" by the defendant. Likewise, the guilty plea itself can't confirm the underlying facts proffered at the plea hearing. If it could, *Shepard*'s requirement of "confirm[ation]" and "assent[]" would be superfluous—every plea colloquy would

qualify as a *Shepard*-approved source because every colloquy precedes a guilty plea.[2]

The Supreme Court's subsequent ACCA decisions in *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016), further undermine the majority's confirmation-by-silence theory. As the Court explained in those cases, "[a]t trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he may have good reason not to—or even be precluded from doing so by the court." *Mathis*, 136 S. Ct. at 2253 (quotation marks omitted). The reason is that "during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Descamps*, 570 U.S. at 270.

The majority attempts to square its view of "confirm[ation]" with *Shepard* based on either or both of two competing rationales. First, the majority invokes a single instance of imprecision in the *Shepard* opinion, which refers to "a transcript of a plea colloquy" without specifying (as it does elsewhere) confirmation of the factual basis. Maj. Op. at 22–23 n.14. Although the majority never explains itself,

---

[2] The existence of *Alford* pleas—guilty pleas in which the defendant maintains his innocence— further militates against assuming that a guilty plea necessarily confirms the factual basis for the plea. *See United States v. Owen*, 858 F.2d 1514, 1516 n.2 (11th Cir. 1988); *United States v. Musa*, 946 F.2d 1297, 1302 (7th Cir. 1991).

perhaps the argument goes that because *unconfirmed* plea transcripts are *Shepard*-approved, it follows *a fortiori* that *implicitly confirmed* plea transcripts are *Shepard*-approved. But that argument rests on a misreading of both *Shepard* and this Court's interpretation of it. Again, if all plea-colloquy transcripts were *Shepard*-approved, the *Shepard* Court's insistence that the defendant confirm a plea's factual basis would have been pointless. And as explained, we have already rejected the view that plea transcripts, simpliciter, are *Shepard*-approved. *See Carter*, 969 F.3d at 1243.

Second, and alternatively, while acknowledging (as it must) that the *Shepard* Court repeatedly stated that the plea's factual basis had to be "confirmed by the defendant," the majority reasons that because the Court never came right out and said that the defendant had to "*expressly confirm*" the factual basis, "nothing in *Shepard* precludes" an implicit-confirmation theory. Maj. Op. at 22–23 n.14. But the mere fact that *Shepard* doesn't "preclude[]" an implicit-confirmation theory hardly demonstrates that *Shepard* is best read to embrace it. After all, it's just as true that nothing in *Shepard* precludes an express-confirmation requirement. The difference, as already explained, is that there are good reasons to read *Shepard* as requiring express confirmation. For one, it is difficult (and the majority makes no attempt) to reconcile an implicit-confirmation theory with *Shepard*'s exclusion from the modified categorical approach even those sources containing evidence

44

that, while not expressly "confirmed," is nonetheless "uncontradicted" and "internally consistent."  544 U.S. at 23–24 n.4.  For another, the Sixth Amendment concerns surrounding judicial factfinding—flagged above and explained in more detail below—caution against empowering courts to make case-by-case determinations about whether, on balance, a defendant *actually* made certain admissions.  And the Court's later decisions in *Descamps* and *Mathis*—which emphasize not only the practical, commonsense reasons a defendant might not want to speak up during a plea colloquy but also the Sixth Amendment limitations on judicial factfinding—only reinforce this conclusion.  The majority largely sidesteps *Descamps* and *Mathis* on the ground that they didn't address ACCA's different-occasions inquiry.  That is surely true, but just as surely, those decisions counsel against reading *Shepard*'s "confirmation" requirement so loosely as to incorporate the majority's implicit-assent-by-silence theory.[3]

---

[3] Beyond best capturing *Shepard*'s import, an express-confirmation requirement also makes good sense:  It sets a bright-line rule that's easily administrable by federal courts reviewing often old, messy state-court records.  In response to this commonsense case for express confirmation, the majority asserts that its approach will protect against "arbitrary results."  Maj. Op. 23–24 n.14.  Noting that a valid plea under Federal Rule of Criminal Procedure 11(b)(3) needn't be expressly confirmed, the majority fears (if I'm understanding its argument correctly) that an express-confirmation rule would cause ACCA to apply unevenly—*i.e.*, more often to defendants who had previously pleaded guilty in states that require express confirmation than to those in states that don't (and perhaps to those who had pleaded guilty in federal court, as well).  But *any* confirmation requirement—including the majority's implicit-confirmation requirement—exceeds Rule 11(b)(3)'s baseline, pursuant to which a district court need only "determine" for itself "that there is a factual basis for the plea."  The "arbitrary results" that the majority envisions thus equally apply to its implicit-confirmation reading of *Shepard*.  At the same time, the majority's approach injects arbitrariness in a far more pernicious way.  The majority creates a totality-of-

45

Rather than explain how its decision conforms to Supreme Court precedent, the majority cites an out-of-circuit decision, *United States v. Taylor*, 659 F.3d 339 (4th Cir. 2011), that predates both *Descamps* and *Mathis*. *Taylor* may or may not be right in the wake of *Descamps* and *Mathis*, but it's not quite on point, in any event. The defendant there contended that his plea was an *Alford* plea—that he had pleaded guilty yet maintained his innocence. *Taylor*, 659 F.3d at 347. But there is daylight between a defendant's claim that his plea was in reality an *Alford* plea and a defendant's claim that he never confirmed the factual basis for his plea within the meaning of *Shepard*—daylight that might have been clouded by how *Taylor* was litigated. Dudley's plea here wasn't an *Alford* plea, but it also didn't *ipso facto* "confirm[]" the plea's factual basis, including everything the prosecutor recited in her factual proffer.[4]

---

the-circumstances test—for which it leaves the evidentiary standard unstated—that courts must apply to make case-by-case judgment calls about whether cold state-court records show *closely enough* that a defendant *basically* confirmed the prosecutor's account. Far from "protect[ing] against arbitrary results," the majority's standard will produce them.

[4] The majority's reliance on *Taylor* is also perplexing considering that the majority denies the relevance of *Descamps* and *Mathis*—and the basis on which it does so. Those cases, the majority says, "have no bearing on this case" because they didn't involve ACCA's different-occasions inquiry. Maj. Op. at 27. But the same is true of *Taylor*. It doesn't address ACCA's different-occasions inquiry, but rather its predicate-felony inquiry.

\* \* \*

Given *Shepard*'s demand for "certainty" and the Court's ensuing focus on the Sixth Amendment limits on judicial factfinding, I would read *Shepard*'s requirement that a defendant "confirm[]" the factual basis of his plea to require more than a mere failure to object:  The defendant must *expressly* confirm the prosecutor's factual proffer in some way.  544 U.S. at 26; *see also United States v. Moreno*, 821 F.3d 223, 229 (2d Cir. 2016) (observing that *Shepard* authorizes courts to consider statements made during a plea colloquy by someone other than the defendant "only when the defendant adopted the statements in some overt fashion").  Because Dudley didn't confirm the prosecutor's factual proffer here, but rather just pleaded guilty, the district court erred when it applied ACCA's sentencing enhancement based on the prosecutor's factual recitation.

## II

What I've said up to this point is enough to decide this case.  Under existing precedent as I read it, reversal is required.

I say more because I believe this case may illustrate cracks in our different-occasions precedent—in particular, whether our different-occasions caselaw can sensibly be squared with our (and the Supreme Court's) ACCA predicate-felony decisions and the Sixth Amendment precedents that undergird them.

47

**A**

**1**

In *Apprendi v. New Jersey*, the Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).[5]  There, the defendant had been sentenced to 12 years' imprisonment under a New Jersey statute that increased the maximum term from 10 years to 20 years if the trial judge found that the defendant committed his crime because of (among other things) racial bias.  *Id.* at 468–71.  Based on the historic link between crime and punishment, the Court reasoned that any fact that increased the prescribed statutory maximum sentence had to be proved beyond a reasonable doubt and found by the jury.  *Id.* at 483 n.10; *see also id.* at 483–84.  The Court has since extended *Apprendi* to increases in mandatory minimum sentences.  *See Alleyne v. United States*, 570 U.S. 99, 116 (2013) .

As is evident from *Apprendi*'s holding, the general rule that any fact that raises the statutory maximum (or per *Alleyne*, the mandatory minimum) sentence

---

[5] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. Const. amend. VI.

must be found by a jury admits of a narrow exception: the "fact of a prior conviction." *See Apprendi*, 530 U.S. at 490. That exception stems from the Court's earlier decision in *Almendarez-Torres v. United States*, which upheld a statutory provision that authorized an enhanced penalty for an alien who had previously been deported "for commission of an aggravated felony." 523 U.S. 224, 226 (1998). The Court justified the enhancement on the ground that the fact of recidivism was a traditional basis for increasing an offender's sentence. *Id.* at 243–44. And though the Supreme Court has since questioned the vitality of *Almendarez-Torres*, it remains good law. *See Alleyne*, 570 U.S. at 111 n.1; Maj. Op. 18–19 n.10.[6]

**2**

As alluded to briefly already, and significantly for present purposes, the *Apprendi* rule—again, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must

---

[6] In *Apprendi*, the Court suggested that even a judge's finding regarding the fact of a prior conviction might raise Sixth Amendment concerns. *See* 530 U.S. at 489 ("[I]t is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested[.]"). The Court noted, though, that "Almendarez-Torres had *admitted* the three earlier convictions for aggravated felonies," so "no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." *Id.* at 488 (emphasis in original). "Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Id.*

be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490—animates the Supreme Court's categorical-approach precedents under ACCA. Recall that the Court first articulated the categorical and modified categorical approaches in *Taylor*, a decade before *Apprendi* came along.  To repeat, in *Taylor* the Court held that in determining whether a defendant's prior offense qualifies as one of ACCA's enumerated violent felonies, the sentencing court should consider a crime's statutory definition—its elements—not its underlying facts.  *Taylor* didn't expressly articulate a constitutional basis for its holding.  But in describing what it saw as the "practical difficulties and potential unfairness of a factual approach," the Court asked, "If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic [crime], could the defendant challenge this conclusion as abridging his right to a jury trial?" 495 U.S. at 601.

When *Shepard* extended *Taylor*'s modified categorical approach to convictions arising out of guilty pleas—*Apprendi* having been decided in the interim—the Court explained that the categorical and modified categorical approaches were based in part on concerns of constitutional avoidance.  Because any judicial factfinding (other than of the fact of a prior conviction) that increases a defendant's statutory sentence violates the Sixth Amendment, the Court reasoned that the "rule of reading statutes to avoid serious risks of unconstitutionality . . .

50

counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict." *Shepard*, 544 U.S. at 25–26 (plurality opinion) (citation omitted).[7]

The Supreme Court's recent caselaw involving ACCA and the modified categorical approach has clarified its constitutional foundations. In *Descamps* and *Mathis*, the Court explained that the modified categorical approach is not an *exception* to the categorical approach, but rather a *tool* for effectuating it. *Descamps*, 570 U.S. at 263–64; *Mathis*, 136 S. Ct. at 2253–54. The modified categorical approach was designed for use when a state statute is "divisible"—*i.e.*, when a single statute effectively delineates multiple crimes. In the Court's words, "the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Mathis*, 136 S. Ct. at 2253; *see also Descamps*, 570 U.S. at 264 ("[T]he job . . . of the modified approach [is] to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense."). Any method that allowed the use of the modified

---

[7] Justice Thomas didn't join the *Shepard* plurality's constitutional-avoidance reasoning, but only because, in his view, it didn't go far enough: "[T]he factfinding procedure the Court rejects," he said, "gives rise to constitutional *error*, not doubt." *Shepard*, 544 U.S. at 28 (Thomas, J., concurring in part and concurring in the judgment) (emphasis added).

51

categorical approach as a technique for judicial factfinding, the Court explained, would likely violate the Sixth Amendment under *Apprendi*:  A judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of."  *Mathis*, 136 S. Ct. at 2252.

**B**

Several interrelated problems arise when we consider how these baseline Sixth Amendment principles—as clarified by the Court's modified-categorical-approach precedents—bear on ACCA's different-occasions inquiry.

**1**

For starters, why doesn't judicial factfinding involving ACCA's different-occasions requirement itself violate the Sixth Amendment?  After all, we've described the different-occasions inquiry as a factual one.  In *Sneed*, for instance, even while adapting *Shepard* to ACCA's different-occasions component, we said that "[it] remains correct that in the different occasions inquiry sentencing courts may look to certain facts underlying the prior conviction."  600 F.3d at 332.  And today's decision reiterates that point when it explains that the different-occasions inquiry, unlike the violent-felony inquiry, "necessarily 'requires looking at the facts underlying the prior convictions.'"  Maj. Op. 17.  Can the different-occasions inquiry, which "necessarily requires" courts to look at facts underlying a prior conviction, really be squared with the proposition that "[o]ther than the fact of a

prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"?  *Apprendi*, 530 U.S. at 490.

Of course, I recognize that we and other circuits have repeatedly rejected constitutional challenges to ACCA's different-occasions inquiry.  *See* Maj. Op. 18–19 (collecting cases).[8]  We've justified ourselves on the ground that the date of an offense is part of the "factual nature" of the conviction—and thus falls under *Almendarez-Torres*'s exception to *Apprendi*.  *See United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017); *United States v. Thompson*, 421 F.3d 278, 285–86 (4th Cir. 2005) ("Whether the burglaries occurred on different occasions . . . is inherent in the convictions themselves . . . ."); *see also* Maj. Op. 18–20.  It follows, then—or so we have suggested, anyway—that judicial factfinding regarding the different-occasions inquiry raises no constitutional concerns.

But that explanation, while plausible at first blush, is tough to square with the Court's characterization of *Almendarez-Torres* as a "narrow exception" to

---

[8] At the same time, I'm not the first to recognize the Sixth Amendment difficulties raised by ACCA's different-occasions inquiry.  *See United States v. Perry*, 908 F.3d 1126, 1134 (8th Cir. 2018) (Stras, J., concurring) ("The court's approach in addressing Perry's past crimes, and in particular whether he committed them 'on occasions different from one another,' falls in line with our cases but is a departure from fundamental Sixth Amendment principles."); *United States v. Thomas*, 572 F.3d 945, 952 (D.C. Cir. 2009) (Ginsburg, J., concurring in part) ("The question whether the sentencing judge may rely solely upon an indictment to determine the date of a prior offense without running afoul of the Sixth Amendment or of the teaching of *Shepard v. United States* is more difficult than the court lets on.").

*Apprendi*'s general rule. *See Alleyne*, 570 U.S. at 111 n.1.[9] As interpreted by *Apprendi*, *Almendarez-Torres* exempts only "the *fact* of a prior conviction" from the bar on judicial factfinding. *Apprendi*, 530 U.S. at 490 (emphasis added). After all, *Almendarez-Torres* itself involved only the bare fact that the defendant had been convicted of a prior aggravated assault. 523 U.S. at 226. Although I don't question *Almendarez-Torres*'s continuing vitality—above my pay grade—it seems that we do more than just faithfully apply that decision when we extend its "narrow exception" for the mere "fact of a prior conviction" to include other related facts, such as the date or time of the underlying offense. Indeed, if *Almendarez-Torres* authorizes factfinding about more than just the *fact* of a prior conviction, what's the limiting principle? What differentiates the timing of the offense from the fact that it was "violent" for ACCA's predicate-felony inquiry? Both, it seems to me, are equally part (or not part) of the "factual nature" of the prior conviction.

The concern that different-occasions factfinding might run afoul of *Apprendi* is only magnified when the offenses' dates alone can't show whether they were committed on different occasions. Consider, for example, the Sixth Circuit's

---

[9] That's true whether the date of an offense is part of the conviction's "factual nature," as we've said, or is "inherent" to the fact of conviction, as the Fourth Circuit has said. *See United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017); *United States v. Thompson*, 421 F.3d 278, 285–86 (4th Cir. 2005). Our formulation that the date is part of a conviction's "factual nature" seems more accurate. Rarely, if ever, will a prosecutor need to prove, or a defendant admit in the case of a plea, the date of an offense as an element of the crime. But at the same time, our formulation facially strays farther from *Almendarez-Torres*'s narrow exception to *Apprendi* for the mere "fact of a prior conviction."

decision in *United States v. Hennessee*, 932 F.3d 437 (2019). The defendant there, James Hennessee, had three ACCA predicate offenses: a second-degree assault in Alabama and two robbery-related crimes in Tennessee—one an aggravated robbery and the other an attempted aggravated robbery. Hennessee's Tennessee indictment dated both robbery-related offenses March 3, 2005. *Id.* at 439–40. To determine whether those crimes occurred on different occasions, the Sixth Circuit relied on facts contained in his state-court plea-colloquy transcript.[10] It found that Hennessee had first attempted to rob a victim in his apartment parking lot between 4:30 a.m. and 5:00 a.m., and had then attempted to rob a second victim at a gas station around 5:20 a.m. Based on those facts, the court inferred (1) that it was possible to discern the end of the first offense and the start of the second, (2) that Hennessee could have ceased his criminal conduct between the two offenses, and (3) that the offenses occurred at different locations—and thus found that the crimes were in fact committed on different occasions. *Id.* at 444–46. It seems hard to believe that *Almendarez-Torres*'s "narrow exception" for the "fact of a prior conviction" authorizes courts to engage in such detailed factfinding about the defendant's prior offenses.

---

[10] Hennessee confirmed the factual basis for his plea. *See* 932 F.3d at 444 n.4.

**2**

If we assume that the different-occasions inquiry does fall within *Almendarez-Torres*'s narrow exception, such that judicial factfinding regarding the different-occasions inquiry raises no constitutional concerns, we encounter a different problem:  Our precedent importing *Shepard*'s source limitation into ACCA's different-occasions inquiry no longer makes any sense.

For ACCA's different-occasions inquiry, we've said that limiting courts to *Shepard* documents avoids "the constitutional concerns underlying . . . *Apprendi*." *Sneed*, 600 F.3d at 1331; *see also* Maj. Op. 17 ("[I]n order to avoid constitutional concerns, we have held that the court is limited to *Shepard*-approved sources . . . ."). Every Circuit to consider the issue has said the same thing. *See United States v. Dantzler*, 771 F.3d 137, 144 (2d Cir. 2014); *United States v. Thompson*, 421 F.3d 278, 282 (4th Cir. 2005); *United States v. White*, 465 F.3d 250, 254 (5th Cir. 2006); *United States v. Boykin*, 669 F.3d 467, 470–71 (7th Cir. 2012); *United States v. Harris*, 447 F.3d 1300, 1305–06 (10th Cir. 2006); *United States v. Thomas*, 572 F.3d 945, 950–52 (D.C. Cir. 2009).

But wait—*what* constitutional concerns?  If, as we have suggested, the different-occasions inquiry falls within the ambit of *Almendarez-Torres*—on the ground that the date of an offense's commission is part of the attendant conviction's "factual nature," *Longoria*, 874 F.3d at 1283, and therefore that a

56

finding that a defendant's prior convictions were for offenses committed on different occasions is merely a finding about the "fact of a prior conviction"—then *there are no constitutional concerns*. And if there are no constitutional concerns, then *Sneed*—in which we applied *Shepard*'s source limitation to the different-occasions inquiry to precisely the same extent that it applies to the violent-felony inquiry, and as a means of avoiding constitutional concerns, *see* 600 F.3d at 1332—was wrongly decided.

Indeed, it is doubly wrong. Not only does it address phantom constitutional concerns, but also, by sanctioning the use of *Shepard*-approved sources as a means of judicial factfinding, it transforms the modified categorical approach into exactly what the Supreme Court has told us it is *not*: an exception to the categorical approach. *Compare Sneed*, 600 F.3d at 1330 ("*Taylor* acknowledged an *exception* for a 'narrow range of cases'" (emphasis added)), *and id.* at 1331 ("*Shepard* . . . explain[ed] further the *exception* to the categorical approach recognized in *Taylor*." (emphasis added)), *with Descamps*, 570 U.S. at 263 ("The modified approach . . . acts not as an exception [to the categorical approach], but instead as a tool."). And judicial factfinding—to bring the conversation full circle—is precisely what the Sixth Amendment forbids.

57

\* \* \*

These knots in our doctrine aren't easily untangled. Perhaps we need to reconsider the constitutionality of the different-occasions inquiry entirely. Or maybe we just need to reconsider *Sneed*, and its importation of *Shepard* into the different-occasions inquiry.

What exactly we should do, I leave for another day. Today, we are bound by our prior precedents. I highlight these problems only to suggest that the *en banc* Court, or perhaps the Supreme Court, might want to clear things up in the appropriate case.

### III

The district court here relied on a prosecutor's unconfirmed factual proffer from Joshua Dudley's state-court plea hearing to enhance his sentence from a 120-month maximum to 215 months. Because doing so contravenes binding precedent, I respectfully dissent from Part III.A of the Court's opinion.

58